## Anthony Doria v. The University of Vermont and State Agricultural College

[589 A.2d 317]

No. 88-237

Present: Allen, C.J., Peck, Gibson and Dooley, JJ.

Opinion Filed February 15, 1991

*David Putter* of *Saxer, Anderson, Wolinsky & Sunshine,* Montpelier, for Plaintiff-Appellant.

*Michael F. Hanley* and *Susan Boyle Ford* of *Plante, Hanley & Gerety, P.C.,* White River Junction, for Defendant-Appellee.

**Dooley, J.** Plaintiff, Anthony Doria, appeals from the decision of the Chittenden Superior Court granting the motion of defendant University of Vermont to dismiss for failure to state a claim pursuant to V.R.C.P. 12(b)(6). We dismiss the appeal as moot.

In October 1985, a professor at the University of Vermont organized students to conduct a telephone political poll as part of a classroom project. The poll was commissioned by two newspapers, for whom the professor was serving as an unpaid consultant. The students interviewed 503 randomly selected individuals, asking each interviewee thirty-two separate ques-

tions on a variety of political issues. The content of the questions was apparently determined by the newspapers.

One of the poll questions gave rise to this litigation. It stated: "Now, I would like to ask you a few questions about the upcoming 1986 state elections. If the US senate election was held today would you be inclined to vote for Patrick Leahy or Richard Snelling?" At the time of the poll, Patrick Leahy was the United States Senator and a candidate for reelection as a Democrat. Richard Snelling was the former Governor of Vermont and an announced candidate for United States Senate as a Republican. Plaintiff was also an announced candidate for the United States Senate as a Republican. Plaintiff's name was omitted from the polling question because the newspapers did not consider him a viable candidate. Thus, the students never informed the interviewees that there were any other candidates in the Senate race besides Leahy and Snelling; nor was plaintiff's name mentioned.

Plaintiff brought suit, alleging, in essence, that defendant university was responsible for the poll and that its actions violated his Vermont constitutional rights as a candidate because the poll "improperly influenced the primary and general elections." Plaintiff did not name the professor, the students or the newspapers. Plaintiff originally filed his complaint in Chittenden Superior Court seeking declaratory and injunctive relief and nominal damages. Defendant removed the case to federal court, at which time plaintiff, with the court's permission, amended his complaint in order to raise additional federal causes of action under the Civil Rights Act, 42 U.S.C. § 1983 (1988). The federal court dismissed the federal claims because it found no state action and remanded the cause back to the superior court to adjudicate the state constitutional claims. The trial court determined that no private right of action is available under any of the three provisions of the Vermont Constitution relied upon by plaintiff, and therefore dismissed the action.

Plaintiff raises three issues on appeal: (1) the trial court erred in predicating dismissal of the complaint on the theory that there is no private right of action under Chapter I, Articles 6, 7 and 8 of the Vermont Constitution; (2) the trial court erred by failing to declare the respective rights and relations of the parties under the same constitutional provisions; and (3) the

trial court failed to give plaintiff notice and an opportunity to address the issues before dismissing the case. We need not address these issues, however, because we find that the complaint fails to state a cause of action and is moot.

Plaintiff's complaint requested several different remedies for his alleged harm, including: (1) a declaratory judgment that defendant violated his state constitutional rights; (2) an injunction prohibiting defendant from using its name or publicly funded facilities to republish the language of the controversial question in subsequent polls; and (3) nominal damages for the harm caused by defendant's past actions and an award of costs.

■■ The purpose of a declaratory judgment is to "provide a declaration of rights, status, and other legal relations of parties to an actual or justiciable controversy." *Robtoy v. City of St. Albans*, 132 Vt. 503, 504, 321 A.2d 45, 46 (1974); see 12 V.S.A. § 4711. Unless an actual or justiciable controversy is present, a declaratory judgment is merely an advisory opinion which we lack the constitutional authority to render. See *Lace v. University of Vermont*, 131 Vt. 170, 175, 303 A.2d 475, 478 (1973). Thus, declaratory relief is available only when a party is suffering from "the threat of actual injury to a protected legal interest." *Town of Cavendish v. Vermont Pub. Power Supply Auth.*, 141 Vt. 144, 147, 446 A.2d 792, 794 (1982). In the present case, even if plaintiff's constitutional rights were violated as he alleges, the harm has already passed, and there is no longer a threat of actual injury. The election involved is long over, and the poll has no continuing relevance. As a result, there is no justiciable controversy, and declaratory relief is not an appropriate remedy.

■■ Plaintiff is also seeking injunctive relief. This form of relief, however, is also moot. In general, a case becomes moot "'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *In re S.H.*, 141 Vt. 278, 280, 448 A.2d 148, 149 (1982) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). Further, the mootness doctrine requires that there be an actual controversy in existence at all stages of review, not merely at the time the plaintiff originally filed the complaint. *Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 239, 515 A.2d 371, 373 (1986). Because the election is now past, and plaintiff is not currently run-

ning for office, he no longer has a "legally cognizable interest" in this remedy nor is this issue "live." His interest in this issue may be reborn should he once again seek political office, but at this time, even if he succeeds on the merits, he would receive no personal benefit from the remedy. Thus, the claim for injunctive relief is moot.

◼ Generally, mootness defeats our jurisdiction to review plaintiff's claims. See *State v. Tallman*, 148 Vt. 465, 468, 537 A.2d 422, 424 (1987). Nevertheless, we recognize an exception to the mootness doctrine for a narrow class of cases which are "'capable of repetition, yet evading review.'" *Id.* at 469, 537 A.2d at 424 (quoting *In re S.H.*, 141 Vt. at 281, 448 A.2d at 149). As we explained in *Tallman*:

> The applicability of this exception is dependent on the satisfaction of a two-part test established by the United States Supreme Court in *Weinstein* v. *Bradford*, 423 U.S. 147, 149 (1975): "(1) the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [must be] a reasonable expectation that the same complaining party [will] be subjected to the same action again."

*Id.*

Plaintiff has not met the first part of the *Weinstein* test; if the issue were to arise again, he would have adequate opportunity to litigate it. While he argues generally that the "shortness of intervals between Vermont elections and the length of time required for final judicial determinations" make the issues evasive of review, the facts here showed that many months elapsed between the poll in question and the primary election in which plaintiff was a candidate. There was adequate opportunity for judicial resolution of plaintiff's claims.

◼ He clearly does not meet the second part of the test. A "reasonable expectation" that plaintiff will be subjected to the same action again must pose more than just a theoretical possibility that the same event will happen again in the future. *In re Green Mountain Power Corp.*, 148 Vt. 333, 335, 532 A.2d 582, 584 (1987). Rather, plaintiff must show a "demonstrated probability" that he would once again become entangled in the same controversy before he may invoke this mootness exception. *Id.*

Although plaintiff may indeed run again for political office, he has failed to show any reasonable expectation that he will be subjected to the same type of political poll.

Finally, in plaintiff's complaint, he requested nominal damages for the harm of defendant's past actions. Nominal damages is the appropriate remedy when there has been an invasion of a right, yet no actual damage occurred. See *Clark v. Aqua Terra Corp.*, 133 Vt. 54, 58, 329 A.2d 666, 668 (1974). Unlike compensatory damages, nominal damages do not compensate the injured party for any actual loss, but rather, "are a trivial amount 'awarded for the infraction of a legal right, where the extent of the loss is not shown, or where the right is one not dependant upon loss or damage.'" See *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 48, 477 A.2d 1224, 1230 (1984) (quoting C. McCormick, Handbook on the Law of Damages § 20, at 85 (1935)).

Nominal damages are available in federal civil rights actions, *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978), and a number of federal courts have held that a civil rights act claim for nominal damages alone is sufficient to avoid mootness. See 13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3533.3, at 266 (2d ed. 1984). We have recently found a civil rights action moot, however, where no actual damages remained. *Silverfine v. Town of Bakersfield*, 155 Vt. 554, 557, 586 A.2d 554, 556 (1991).

We do not believe that the claim for nominal damages avoids mootness in this case. We have never ruled that individuals have a claim for compensatory damages premised solely on a violation of the Vermont constitution. See *Shields v. Gerhart*, 155 Vt. 141, 148, 582 A.2d 153, 158 (1990). Plaintiff here never sought such damages although he claims his candidacy was injured by the poll in question. Thus, it appears that the purpose of the nominal damage claim is solely to obtain a ruling on the validity of the poll despite the fact that the ruling will no longer have any effect and there remains no real controversy between the parties. We decline to implement that purpose.

Although we find the matter to be moot, we have also reviewed plaintiff's complaint. Even if we did reach the merits, the dismissal of plaintiff's complaint was appropriate. Plaintiff

has relied upon three relatively broad and general provisions of Chapter I of the Vermont Constitution: (1) Article 6, which makes officers of state government servants of the people;[1] (2) Article 7, which provides that government is for the people and prohibits emoluments or advantages for particular people;[2] and (3) Article 8, which provides that elections should be pure and specifies the rights of freemen therein.[3] To the extent these provisions grant rights to individual citizens, they are intended to restrict the actions of government. While the University of Vermont receives state money and is a public institution for purposes of providing higher education, it has no "political power or dominion over the election process." *Doria v. University of Vermont*, Civil Action No. 86-59, slip op. at 6 (D. Vt. Aug. 11, 1986). Neither the university nor its employees or officers are the "officers of government, whether legislative or executive," as provided by Article 6. See *Sprague v. University of Vermont*, 661 F. Supp. 1132, 1137–38 (D. Vt. 1987) (APA does not apply to UVM because the university does not cater to the public at large but to its students, faculty, and employees and because "UVM officials are not traditional officers of government."); cf. *Healy v. James*, 408 U.S. 169, 201–02 (1972) (Rehnquist, J., concurring) (constitutional limitations on government acting as the administrator of a college differ from limitations on government acting as sovereign to enforce its criminal laws). Further, defendant as an institution is entitled to a measure of academic

---

[1] Article 6 provides:

> That all power being originally inherent in and consequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; and at all times, in a legal way, accountable to them.

[2] Article 7 provides:

> That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single man, family, or set of men, who are a part only of that community; and that the community hath an indubitable, unalienable, and indefeasible right, to reform or alter government, in such manner as shall be, by that community, judged most conducive to the public weal.

[3] Article 8 provides:

> That all elections ought to be free and without corruption, and that all freemen, having a sufficient, evident, common interest with, and attachment to the community, have a right to elect officers, and be elected into office, agreeably to the regulations made in this constitution.

freedom, free from regulation by the executive branch or the courts. See generally *Piarowski v. Illinois Community College*, 759 F.2d 625, 629 (7th Cir.), *cert. denied*, 474 U.S. 1007 (1985). We would be very reluctant to construe the constitutional rights of third parties, outside the academic community, as requiring court direction of the content of defendant's academic program.

The need for nonintervention is even stronger in this case. According to the facts provided by plaintiff, the poll here was done by a faculty member and students, with the questions selected by the faculty member and two newspapers. The only involvement of defendant is that the professor is an employee of defendant and uses defendant's name, staff and equipment, and that defendant refuses to intervene to stop such polling questions in the future. The theory of why defendant is liable appears to involve a mixture of respondeat superior and breach of a duty to control faculty and students. We find this theory basically inconsistent with an academic environment where faculty are entitled to some measure of freedom in determining teaching methods. See generally *Parate v. Isibor*, 868 F.2d 821, 827 (6th Cir. 1989).

In some ways the request here is similar to that in *Smith v. Day*, 148 Vt. 595, 599, 538 A.2d 157, 159–60 (1987), where this Court held that a private university had no duty to control the conduct of its students to prevent them from harming third persons. We found such a duty unreasonably burdensome and inconsistent with the personal responsibility of the students and further found it would lead to repressive regulation inconsistent with the goals of higher education. Similarly, we conclude that requiring defendant to strictly regulate and control the activity involved here, or any other student and faculty activity that might have an impact on the electoral process, would be basically inconsistent with the academic environment.

█ █ We leave to another day whether actions similar to those involved here, if done by governmental officials, would give rise to the liability plaintiff claims. We hold only that the various constitutional articles are not implicated when the actions are taken by faculty and students of the University of Vermont.

*Appeal dismissed.*