## BURLINGTON POLICE OFFICERS' ASSOCIATION, et al. v. CITY OF BURLINGTON

[689 A.2d 1071]

No. 94-665

October 14, 1996. Plaintiffs Theodore Everlof and the Burlington Police Officers' Association appeal a superior court order dismissing their complaint for injunctive relief. We vacate and dismiss the claim because the suit is against the wrong party.

In August 1994, Everlof, then a police officer employed by the Burlington Police Department and a member of the Burlington Police Officers' Association, was the subject of an internal investigation by the Department. The Department charged him with violating its administrative rules by engaging in domestic abuse and, in accordance with procedure, ordered him to attend an interview and answer questions. Everlof was told that he would lose his job if he refused to answer.

On August 17, Everlof and the Burlington Police Officers' Association filed a complaint seeking a declaratory judgment that the Department's promise of use and derivative-use immunity was insufficient to protect him against self-incrimination under the Vermont Constitution. The form used by the Department to notify officers about internal investigations states that "[n]o answers given nor any information gained by this administrative interview may be admissible against you in any proceeding." Plaintiffs also sought to enjoin the Department from compelling Everlof to give evidence in an internal investigation without providing him transactional immunity, which would bar prosecution for conduct that is the subject of compelled testimony.

Shortly thereafter, plaintiffs filed an amended complaint seeking summary judgment and certification of a class including all patrol officers below the rank of sergeant. The City of Burlington filed a motion to dismiss for failure to state a claim upon which relief can be granted, arguing that the Department's procedures complied with the state constitution and that plaintiffs' claim was not ripe for adjudication.

In September the Department modified its interview requirements for Everlof's case such that he would not be disciplined if he chose to invoke his privilege against self-incrimination. Everlof submitted to the interview but did not answer questions. The Department pursued its investigation without his testimony. The City then moved to dismiss on the ground that the case was moot. The court denied defendant's motion, concluding that the issue was capable of repetition, but evaded review. Ultimately, the trial court certified the class and granted summary judgment to the City. This appeal followed.

In essence, plaintiffs seek to have the form used to notify police officers about internal investigations modified to read that if an officer answers questions about conduct, the officer cannot be prosecuted for that conduct. Plaintiffs base their claim to such a notice on Chapter I, Article 10 of the Vermont Constitution, because the self-incrimination clause of the Fifth Amendment to the United States Constitution has been interpreted to require only use and derivative-use immunity.

As is common, plaintiffs' state constitutional argument urges us to accept federal doctrine, except for the one matter in issue, and engraft onto it a more liberal state rule for that issue. Although we have some precedents exploring the self-incrimination right in Article 10, the issues raised here are entirely those of first impression, and we should not blindly accept the federal scheme.

The critical federal decisions are

*Garrity v. New Jersey*, 385 U.S. 493 (1967), *Gardner v. Broderick*, 392 U.S. 273 (1968), *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280 (1968), and *Lefkowitz v. Turley*, 414 U.S. 70 (1973). In *Garrity*, a police officer, who faced dismissal if he refused to answer questions in an internal investigation hearing, was convicted in a criminal proceeding based on evidence that included the testimony he gave in the administrative investigation. The Supreme Court held the statements in the investigation were coerced because of the threat of dismissal and were inadmissible in the criminal proceeding because there was no effective waiver of defendant's self-incrimination rights. 385 U.S. at 500. *Gardner*, 392 U.S. at 279, and *Uniformed Sanitation Men Ass'n*, 392 U.S. at 284-85, announced the corollary holding that public employees could not be fired for refusing to waive their self-incrimination rights in an administrative investigation of their misconduct. *Gardner*, 392 U.S. at 278, added dicta, amplified in *Lefkowitz*, 414 U.S. at 81, that the public employee could be required to answer incriminating questions, and be fired for refusal to answer, if offered immunity against use of the answers in future criminal proceedings. As the Court summarized in *Lefkowitz*, "[I]f answers are to be required in such circumstances States must offer to the witness whatever immunity is required to supplant the privilege and may not insist that the employee or contractor waive such immunity." 414 U.S. at 85.

The Supreme Court has never returned to the issue to define how the state must offer immunity to the witness. There are three resolutions to the question, and each has some support in case law: a formal grant of immunity, warnings from the employer, and self-executing immunity. See B. Warnken, *The Law Enforcement Officers' Privilege Against Compelled Self-Incrimination*, 16 Balt. L. Rev. 452, 481-88 (1987). First, the requirement could be that the employee must be offered immunity by the official or officials who are empowered to grant such immunity under state law. Massachusetts appears to have adopted this approach under its state constitution. See *Baglioni v. Chief of Police*, 656 N.E.2d 1223, 1224 (Mass. 1995); *Carney v. City of Springfield*, 532 N.E.2d 631, 635-36 (Mass. 1988).

Second, the requirement could be that the employer advise the employee that the relevant immunity covers the testimony given in the internal investigation and that the giving of such testimony does not involve waiver of a defendant's self-incrimination rights. Some federal and state courts, applying federal law, have required such an advisement. See *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 426 F.2d 619, 627 (2d Cir. 1970), *cert. denied*, 406 U.S. 961 (1972); *Brown v. City of North Kansas City*, 779 S.W.2d 596, 600 (Mo. Ct. App. 1989). The requirement for such an advisement is a central element of plaintiffs' complaint here. Indeed, as defined in the complaint, the sole issue is the content of such advisement.

Third, the requirement could be that the giving of coerced testimony in the internal investigation, without an explicit waiver of the privilege against self-incrimination, creates a form of immunity applicable in any related criminal proceeding. This is the narrow holding of *Garrity*. 385 U.S. at 500. It need not be accompanied by any employer advisement or action by a prosecutor or court, prior to the employee giving testimony in the internal investigation.

Of these options, the second is by far the least attractive. If police officers are prosecuted in Vermont courts, it will be by the Attorney General or a state's attorney, or both. The City has no rele-

vant power of prosecution,* and certainly no power to offer immunity from prosecution by the State of Vermont. Indeed, the only statutory power given to a prosecutor to grant immunity to a witness allows a grant of use and derivative-use immunity. See 12 V.S.A. § 1664. Thus, the City's statement is simply its interpretation of self-incrimination law, which is unenforceable if it is wrong.

There is no need for an unenforceable statement by the employer of its view of the consequences of coerced testimony in subsequent criminal proceedings. The advisement that plaintiffs challenge in this case is explicitly required by the collective bargaining agreement between plaintiff Burlington Police Officers' Association and defendant City of Burlington. No doubt these parties can bargain for any

---

*The City has a city grand juror, who under the city ordinances "may prosecute before the applicable Vermont courts violations of the ordinances, regulations and by-laws of said city." Burlington, Vt., Code of Ordinances § 151 (1996). Town and city grand jurors formerly had the power to prosecute misdemeanors before the justice and municipal courts and frequently were appointed to exercise this authority, at least in the large communities of the state. See V.S. 1947 § 2373; State v. Hedding, 122 Vt. 379, 172 A.2d 599 (1961) (appeal of DWI conviction in Barre Municipal Court prosecuted by the Grand Juror for the City of Barre). With the elimination of the judicial duties of justices of the peace, and the creation of the district court, the prosecutorial functions of the office have atrophied. See 32 V.S.A. § 1519 (grand juror may not be paid a fee for a case prosecuted in a town or city where a state's attorney resides unless the state's attorney is disqualified or unable to handle the case). It is unlikely today that the Grand Juror of Burlington would be prosecuting a criminal case against a police officer, for which immunity is required. In any event, the city grand juror has no power to offer immunity.

kind of statement they deem necessary to ensure that officers do not waive important rights because of ignorance. As if to reinforce this point, the current bargained-for advisement is, at best, an incomplete statement of what is involved in use and derivative-use immunity.

We are also concerned about the prospect of police officers immunizing each other through disciplinary investigations, making decisions without the involvement of prosecutors. Even if we assume everyone will act in good faith, a very real risk exists that officers who commit criminal acts will escape criminal responsibility because of acts taken in disciplinary investigations. See generally K. Bloch, *Police Officers Accused of Crime: Prosecutorial and Fifth Amendment Risks Posed by Police-Elicited "Use Immunized" Statements*, 1992 U. Ill. L. Rev. 625. Whatever rule we adopt should minimize this risk. Ideally, the Legislature should require that a prosecutor be informed of pending disciplinary investigations, and the prosecutor should have the power to prevent coerced interrogation that would lead to immunity claims that would defeat criminal prosecution.

We are not required to decide between options one and three in this case. Whichever option we might embrace, no relief is available against the City of Burlington, the only defendant in this case.

*Vacated and dismissed.*

**Morse, J.,** concurring. Although I concur in the holding that the appeal should be dismissed, I disagree with the Court's apparent willingness to decide the matter. At the outset of its opinion, the Court acknowledges that plaintiff Everlof was not compelled to submit to the procedure that forms the basis of his challenge, which intimates the case is moot. Yet, at the conclusion, the Court finds that no relief is available against the named defendant, an issue not raised on appeal. In between, the Court provides an interest-

ing discussion of the merits but ultimately reaches no conclusion because, as the Court recognizes, it is unnecessary to its holding.

I would have avoided the obiter dictum and simply held that the case is moot. Otherwise, it would seem that the matter may be easily raised to our Court again simply by adding the proper party. V.R.C.P. 19(a).

"[T]he mootness doctrine requires that there be an actual controversy in existence at all stages of review, not merely at the time the plaintiff originally filed the complaint." *Doria v. University of Vt.*, 156 Vt. 114, 117, 589 A.2d 317, 319 (1991) (mootness defeats jurisdiction); *In re S.H.*, 141 Vt. 278, 280, 448 A.2d 148, 149 (1982) (petitioner's stake in litigation must continue throughout entirety to confer jurisdiction upon court). Here, the issue is moot as to plaintiff Everlof because the Department changed its procedures in his case and he was not compelled to answer questions.

Plaintiffs contend, and the trial court concluded, that this case falls within an exception to the mootness doctrine because it is "'capable of repetition, yet evading review.'" *Sosna v. Iowa*, 419 U.S. 393, 400-01 (1975) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2 (1972)); see *State v. Tallman*, 148 Vt. 465, 469, 537 A.2d 422, 424 (1987). The applicability of this exception depends on the satisfaction of two elements: (1) the challenged action must be of such short duration that it cannot be fully litigated prior to the time it ceases or expires, and (2) there must be a reasonable expectation that the same complaining party will be subject to the same action again. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *Tallman*, 148 Vt. at 469, 537 A.2d at 424. In this case, neither element can be met.

Although it is theoretically possible, it is unlikely that Everlof will be in this situation again. See *Doria*, 156 Vt. at 118-19, 589 A.2d at 319 (plaintiff must show probability that he will become entangled in same controversy again). Thus element two is not satisfied. Furthermore, it is not inevitable that in every case in which it could be raised, the immunity issue would become moot before it could be adjudicated. On the contrary, the litigation process could be managed to enable review. An individual subject to prosecution for conduct that was the subject of a compelled statement could, through a petition for declaratory relief, see *Doria*, 156 Vt. at 117, 589 A.2d at 318; 12 V.S.A. § 4711, and the interlocutory appeal process, see *State v. Pelican*, 154 Vt. 496, 501, 580 A.2d 942, 946 (1990), suspend criminal prosecution pending review. This is not a situation where the mere passage of time will invariably render the issue moot. Cf. *Roe v. Wade*, 410 U.S. 113, 125 (1973) (266-day human gestation period is so short that pregnancy will come to term before appellate process is complete). Thus the exception to the mootness doctrine does not apply to Everlof individually.

Where a class has been certified,[*] however, the claim will fall within the exception if "the issue sought to be litigated escapes full appellate review at the behest of any single challenger" even if it is moot as to the named plaintiff. *Sosna*, 419 U.S. at 401. Thus, as long as the controversy remains live with respect to at least one member, a class need only satisfy the first element of the two-part test. See *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *Sosna*, 419 U.S. at 401-02; *Robidoux v. Celani*, 987 F.2d 931, 938-39 (2d Cir. 1993). Nevertheless, this standard cannot be met here.

Apparently no class member is subject to internal investigations. It is certainly possible that this issue is no longer live

---

[*] Because no challenge to certification was made on appeal, we assume for the purposes of this analysis that the class was properly certified.

with respect to any class member. Furthermore, as noted above, plaintiffs' claim is not one that evades review. *Sosna*, 419 U.S. at 399-400. To be sure, the "evading review" exception discussed in *Sosna* does not represent the only circumstance where a "live controversy" may be found notwithstanding the fact that the case may be moot as to the named class representative. *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 753-55 (1976). The ultimate question is whether the class litigants have "'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions.'" *Bowman Transp. Co.*, 424 U.S. at 755 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). As noted above, the requisite adversarial relationship in this case is wholly speculative, and falls well short of the "concrete adverseness" we require. For this reason, I would dismiss the case as moot.

Justice Gibson authorizes me to say that he joins in this concurrence.

Motion for reargument denied November 18, 1996.