Vermont Hunter's v. Winooski Valley, No. 258-03 Cncv (Katz, J., Oct. 6, 2003)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                              Docket No. 258-03 CnCv

VERMONT HUNTERS, ANGLERS

v.

WINOOSKI VALLEY PARK DISTRICT

ENTRY

Vermont law provides that no municipality shall "directly regulate hunting . . . ." 24 V.S.A. § 2295. The question here posed is whether that prohibition bars defendant Park District from prohibiting hunting on its

lands.  The answer must be that it does not.

Were the City of Burlington to bar the shooting of varmints in City Hall Park, that would strike no one as noteworthy or violative of the cited statute.  It is a small park, in the midst of Vermont's busiest downtown. Shooting guns, even .22s, in such an environment would strike any reasonable person as unsafe.  This pedestrian conclusion, if it requires support, would find it in the second sentence of § 2295, which notes that Vermont law "shall not limit the powers conferred upon a [municipality] under section 2291(8)," which specifies the particular authority to "regulate or prohibit the use or discharge, but not possession of, firearms within the municipality or specified portions thereof."  So, were Burlington to bar hunting from City Hall Park, it would not be directly regulating hunting and not violating § 2295.

What apparently separates the Park District from City Hall Park, in the thinking of Vermont Hunters, is that the District is in the unique circumstance of owning all the lands within its boundaries.  There is no land within the municipal Park District which is not also owned by the District.  The District is Vermont's only municipality whose actions as a landowner affect the entire municipal district.   When the District bars hunting on its own lands, it bars that activity from the entire municipal district.

The District is entitled to acquire lands.  10 V.S.A. § 6303.  Having so acquired, it is entitled to enforce rights "as are available to an owner of real property under the laws of this state . . . ."  10 V.S.A. § 6307(a).  The promulgation and enforcement of a hunting ban is one of the rights of private property, and it is not surprising that municipal entities would have

similar authority over the lands they happen to acquire.  Although it is not for the court to pass on the wisdom of this, or any, municipal regulation, that issue would seem beyond discussion here.  The Park District's lands are neither extensive nor remote.  They lie in Chittenden County and are primarily accessed for walking.  The banks of the Winooski River owned by the District are in places only a few yards wide.  Permitting hunting in such an urban space would obviously imperil those seeking a hermit thrush, a quiet amble, or possibly a tryst (though we withhold judgment on the value of any of  these activities, especially ambling).  When the District bars hunting on its lands, it is acting under its private and proprietary function.  Town of Stockbridge v. State Highway Board, 125 Vt. 366, 369 (1965).  This does not "directly regulating hunting" although it creates an obvious, indirect effect.  Finally, the Park District's role as both municipal entity and

land manager must be balanced with a certain degree of subtlety.  Vermont Hunters' coronation of section 2295 as the final word on hunting and trapping in Vermont forces their analysis into the untenable position of denying nearly any rights of ownership to municipalities or municipal corporations, thereby advocating a second-class  level of ownership.

We therefore conclude the District is within its authority to ban hunting on District lands.

Vermont Hunters second contention is that an injunction is necessary to force the District to immediately change or replace every single sign and publication pertaining to the possession of firearms.  The District has voluntarily begun removing or altering their signs, web site, and pamphlets to reflect this change.  More importantly, it has officially altered its position to allow the possession, but not discharge of firearms, within its lands.  This is, or rather was, the heart of Vermont Hunters'

contention on this issue. The right to possess firearms lays unchallenged by the District. Vermont Hunters have not shown any other source of controversy about the issue. They have not, for example, been prohibited by any member of the District's staff, armed with a ambiguous sign or outdated pamphlet, from carrying firearms within the Park District. Nor have Vermont Hunters shown any legal grounds that mandate the District to track down and stamp out every outdated pamphlet in existence or create signs that satisfy the Vermont Hunters' sense of clarity about the issue. Any further action at this time is unwarranted as there is no longer a justiciable controversy left to support a declaratory judgment. Doria v. University of Vermont, 156 Vt. 114, 117 (1991) ("Unless an actual or justiciable controversy is present, a declaratory judgment is merely an advisory opinion which we lack the constitutional authority to render.").

Finally, Vermont Hunters present no persuasive evidence or legal reasoning for abandoning the "American Rule" for attorney fees.

Unless cause is shown by October 31, 2003, this action will be dismissed.

Dated at Burlington, Vermont, _____, 2003.


_____
Judge