Hunters, Anglers & Trappers Assoc. of VT v. Winooski Valley 
 Park District (2005-056)

2006 VT 82

[Filed 17-Nov-2006]


 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2006 VT 82

 No. 2005-056


 Hunters, Anglers and Trappers Supreme Court
 Association of Vermont, Inc.
 On Appeal from
 v. Chittenden Superior Court


 Winooski Valley Park District March Term, 2006 


 Matthew I. Katz, J.

 Jacob B. Perkinson, South Burlington, for Plaintiff-Appellant.

 Richard C. Whittlesey of Roesler, Whittlesey, Meekins & Amidon, Burlington,
 for Defendant-Appellee.


 PRESENT: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

 
 ¶ 1. JOHNSON, J. This appeal arises from a challenge by
 plaintiff Hunters, Anglers and Trappers Association of Vermont, Inc.
 ("HAT") to the Winooski Valley Park District's posted ban on hunting and
 trapping on lands within the District. The superior court upheld the
 hunting ban, granting summary judgment to the District on HAT's principal
 claim. HAT contends the court erred by: (1) concluding that the District
 possessed the authority to prevent hunting and trapping within the
 District; (2) relying on evidence outside the record, and refusing to order
 discovery, regarding the issue of whether hunting and trapping could be
 accomplished safely within the District; (3) dismissing as moot HAT's
 claims that the District lacked authority to ban possession of firearms
 within the District; and (4) failing to rule on HAT's motion to amend its
 complaint to add further claims against the District. We affirm.

 ¶ 2. The relevant facts, which are not in dispute, are as follows. 
 HAT is a non-profit corporation "comprised of people and entities
 interested in the activities of hunters, anglers and trappers in Vermont." 
 The District is a union municipal district containing portions of the
 municipalities of Burlington, Colchester, Essex, Jericho, South Burlington,
 Williston, and Winooski. It was chartered in 1972 to engage in "[t]he
 planning of its lands and waters in the Winooski Valley for the purposes of
 conservation, recreation, the establishment of parks and the preservation
 of natural areas" and "[t]he acquisition and management of lands and waters
 in the Winooski Valley." Under the statute allowing formation of union
 municipal districts, such districts possess all of the powers of a
 municipal corporation upon their formation, 24 V.S.A. § 4865, including the
 power to acquire real property. 10 V.S.A. § 6302. The District has
 acquired an ownership interest in approximately 1,730 acres of land, and it
 leases an additional 134 acres. The District manages this land as parkland
 that is open to the public for a variety of uses. The District does not
 allow hunting, shooting, or trapping on any District property, and it has
 posted signs to that effect according to the requirements applicable to
 private property owners under 10 V.S.A. § 5201. Prior to the commencement
 of this action, the District's signs prohibiting hunting also included a
 ban on the possession of firearms.
 
 ¶ 3. In February 2003, HAT filed a complaint seeking an injunction
 to prevent the District from regulating hunting and trapping. HAT also
 sought to enjoin the District from banning the possession of firearms on
 its lands. The complaint alleged that the District's ban on hunting,
 trapping, and firearm possession violated both the Vermont Constitution's
 protection of the right to hunt and 24 V.S.A. § 2295, which prohibits
 municipalities from directly regulating hunting or trapping. During the
 course of the ensuing litigation, the District changed its policy to
 eliminate its ban on the possession of firearms, and began changing the
 wording of its signs accordingly. HAT and the District filed cross-motions
 for summary judgment regarding the hunting and trapping ban. HAT also
 filed a "conditional" motion to amend its complaint, seeking to add further
 claims in the event that the court ruled in favor of the District on the
 original claims. These additional claims alleged that the District's
 actions violated due process and the Vermont Consumer Fraud Act, and
 requested declaratory relief stating that the District did not have the
 right to ban possession of firearms on its lands. 

 ¶ 4. In July 2003, the superior court ruled that the District's
 elimination of its ban on the possession of firearms would render that part
 of the litigation moot, assuming the District followed through by changing
 the wording of its signs. In October 2003, following further submissions
 related to the District's progress toward changing its signs, the court
 ruled that the firearm possession claim was moot. In the same order, the
 court ruled that the District possessed legal authority to prohibit hunting
 and trapping on its own lands. The court did not rule on HAT's motion to
 amend its complaint. Instead, it gave HAT until the end of October 2003 to
 show cause why the action should not be dismissed, given its rulings in
 favor of the District. Within that period, HAT submitted affidavits from
 hunters attesting that it was safe to hunt on the District's lands. HAT's
 submission sought to contradict any assertion that hunting was necessarily
 unsafe on the District's lands, and stated that "good cause exists to allow
 the requested amendment of its Complaint and that this case should not be
 dismissed." In January 2005, the court entered final judgment in favor of
 the District. This appeal followed.
 
 I.

 ¶ 5. HAT's principal claim on appeal is that the court erred by
 concluding that the District has the legal authority to prohibit hunting
 and trapping on its own lands. We review this question of law de novo. 
 Charbonneau v. Gorczyk, 2003 VT 105, ¶ 2, 176 Vt. 140, 828 A.2d 117. HAT's
 assertion rests on the Vermont Constitution, general principles of local
 government law, and a statutory provision that specifically prohibits
 municipalities from regulating hunting and trapping. 

 ¶ 6. First, HAT argues that Chapter II, § 67 of the Vermont
 Constitution guarantees the right to hunt and trap. Section 67 provides:

 The inhabitants of this State shall have liberty in seasonable
 times, to hunt and fowl on the lands they hold, and on other lands
 not inclosed, and in like manner to fish in all boatable and other
 waters (not private property) under proper regulations, to be made
 and provided by the General Assembly.

 Vt. Const. ch. II, § 67. We agree with HAT that this provision provides
 constitutional hunting rights, but those rights are not necessarily
 implicated in this case. Section 67 vests the Legislature with the power
 to regulate hunting and trapping even on privately held lands, and we have
 previously held that the Legislature may delegate this power to some other
 "body or person." Elliott v. Fish & Game Comm'n, 117 Vt. 61, 69, 84 A.2d
 588, 593 (1951). Thus, provided that the Legislature has properly
 delegated its authority to the District, the District's regulation of
 hunting and trapping will not violate any constitutional right. 
 
 ¶ 7. HAT next relies on the general principle that municipalities
 may not act without explicit authorization from the state. HAT is correct
 that "[w]e have consistently adhered to the so-called Dillon's Rule that 'a
 municipality has only those powers and functions specifically authorized by
 the legislature, and such additional functions as may be incident,
 subordinate or necessary to the exercise thereof.' " In re Ball Mountain
 Dam Hydroelectric Project, 154 Vt. 189, 192, 576 A.2d 124, 126 (1990)
 (quoting Hinesburg Sand & Gravel Co. v. Town of Hinesburg, 135 Vt. 484,
 486, 380 A.2d 64, 66 (1977)). The limitations imposed by Dillon's Rule are
 not dispositive here, however. If the Legislature has delegated sufficient
 authority to the District to satisfy the demands of the Vermont
 Constitution, it follows that the District needs no further legislative
 approval under Dillon's Rule. Moreover, Dillon's Rule is subject to the
 exception that when the character of the municipality's actions is
 "proprietary" and not "governmental," the municipality's power is not so
 limited. See 1 J. Dillon, Municipal Corporations § 109, at 182 (5th ed.
 1911) (stating that "[o]ver all [a municipal corporation's] civil,
 political, or governmental powers, the authority of the legislature is, in
 the nature of things, supreme and without limitation," but that "in its
 proprietary or private character . . . the [municipal] corporation is to be
 regarded . . . as a private corporation, or at least not public in the
 sense that the power of the legislature over it or the rights represented
 by it, is omnipotent" (emphasis in original)). While the proprietary
 functions of a municipality are often difficult to distinguish from its
 governmental powers, id. § 110, at 183, the distinction is especially clear
 with respect to the municipality's ownership of property. See id. § 109,
 at 181 (stating that the distinction between governmental and proprietary
 functions "is highly important, and is frequently referred to, particularly
 in the cases relating to the property . . . of municipal corporations"). 
 Since the District owns or leases all of the lands in question, Dillon's
 Rule places no limitation on the District's ability to restrict hunting and
 trapping.
 
 ¶ 8. HAT's final assertion as to the District's authority relies
 on 24 V.S.A. § 2295, which states, in relevant part, "Except as otherwise
 provided by law, no town, city or incorporated village, by ordinance,
 resolution or other enactment, shall directly regulate hunting, fishing and
 trapping or the possession . . . of traps, firearms, ammunition, or
 components of firearms or ammunition." There is no question that this
 statute, standing alone, would prohibit any municipality from enacting
 regulations limiting hunting and trapping within its boundaries. The
 District, however, points out that § 2295 does not apply where "otherwise
 provided by law," and cites two sources of legal authority to implement a
 hunting and trapping ban despite the restrictions of § 2295. First, it
 relies on 24 V.S.A. § 2291(8), which states that municipalities have the
 authority "[t]o regulate or prohibit the use or discharge, but not
 possession of, firearms within the municipality or specified portions
 thereof." Section 2295 explicitly provides that it is not intended to
 limit this power. See 24 V.S.A. § 2295 ("This section shall not limit the
 powers conferred upon a town, city or incorporated village under section
 2291(8) of this title."). Second, the District argues that it possesses
 the power to post signs prohibiting hunting and trapping on its own lands. 
 10 V.S.A. § 5201(a) ("An owner . . . who desires to protect his land or
 waters over which he has exclusive control, may maintain notices stating,
 if he wishes to prohibit the taking of game and wild animals, that shooting
 and trapping are prohibited . . . .").
 
 ¶ 9. While 24 V.S.A. § 2291(8) undoubtedly gives the District the
 power to regulate or prohibit the discharge of firearms, it does not appear
 to allow the District to regulate other means of hunting besides shooting. 
 We must therefore determine whether 24 V.S.A. § 2295, by making it
 impermissible for a municipality to "directly regulate" hunting and
 trapping, also prohibits the District from posting its land pursuant to 10
 V.S.A. § 5201. We conclude that the District is within its authority to
 post its land against hunting and trapping. Our conclusion is based on a
 combination of several statutory provisions authorizing the District to
 manage its own land in the interest of conservation. These provisions have
 two key effects. First, they establish that the Legislature has
 affirmatively delegated sufficient authority to the District that it may
 ban hunting and trapping on its own lands without violating the Vermont
 Constitution or Dillon's Rule. Second, they establish that 24 V.S.A. §
 2295 does not prohibit the District from taking such action.

 ¶ 10. The Legislature has authorized municipalities to acquire
 interests in land, 10 V.S.A. § 6302, including fee simple and leasehold
 interests. Id. § 6303(a)(1), (6). The right to acquire land in fee simple
 was thus among the rights of the District upon its formation. See 24
 V.S.A. § 4865 (stating that upon approval by the participating
 municipalities, a "union municipal district shall become a body politic and
 corporate with the powers incident to a public corporation"). Section 6307
 of Title 10 also provides that a municipality that owns land, and thus, the
 District, "may institute injunction proceedings to enforce the rights of
 the municipality, . . . and may take all other proceedings as are available
 to an owner of real property under the laws of this state to protect and
 conserve its right or interest."

 ¶ 11. The District argues that 10 V.S.A. § 6307 implicitly
 incorporates 10 V.S.A. § 5201(a), and thus, allows municipalities to post
 their land against hunting and trapping. According to this reasoning,
 posting land against hunting and trapping is a proceeding to protect and
 conserve the District's right or interest. HAT argues that posting is not
 among the proceedings referred to in 10 V.S.A. § 6307 because prohibiting
 hunting and trapping is not a permissible "right or interest" of the
 District. We agree with the District that its rights and interests can
 include limitations on hunting and trapping. First, the District's charter
 explicitly provides that it should engage in planning for "the purposes of
 conservation, recreation, the establishment of parks and the preservation
 of natural areas." More importantly, the Legislature has stated its
 purpose in allowing municipalities to acquire interests in land: 
 
 It is the purpose of [10 V.S.A. §§ 6301-6309] to encourage
 and assist the maintenance of the present uses of Vermont's
 agricultural, forest, and other undeveloped land and to prevent
 the accelerated residential and commercial development thereof; to
 preserve and to enhance Vermont's scenic natural resources; to
 strengthen the base of the recreation industry and to increase
 employment, income, business, and investment; and to enable the
 citizens of Vermont to plan its orderly growth in the face of
 increasing development pressures in the interests of the public
 health, safety and welfare. 

 10 V.S.A. § 6301. All of the objectives listed in § 6301 are interests
 that a municipality may pursue by enforcing its property rights under §
 6307. The fact that the list includes the preservation and enhancement of
 Vermont's scenic natural resources, among other related interests, seems
 sufficient to justify including the posting of land against hunting and
 trapping among the permissible proceedings a municipality may take to
 protect an interest in land. We recognize that hunting and trapping are
 often consistent with the interests of conservation and preservation, and
 there is no question that it would be within the District's discretion to
 allow hunting and trapping on its lands, but the intrinsic value of hunting
 and trapping is not at issue here. It is just as plainly within the
 District's discretion under § 6301 to conclude that prohibiting hunting and
 trapping will best serve the interests listed in the statute, and
 therefore, it may post its land to protect those interests.
 
 ¶ 12. That the Legislature has provided the District with the
 affirmative authority to post its land, however, does not necessarily
 resolve HAT's central objection to the hunting and trapping ban. HAT
 argues that notwithstanding any affirmative power the above-cited statutes
 may grant to the District, allowing the District to ban hunting and
 trapping on its own land would be inconsistent with the provisions of 24
 V.S.A. § 2295. We cannot agree. Section 2295 prohibits municipalities
 from directly regulating hunting and trapping, "except as otherwise
 provided by law." (Emphasis added). Here, the law "otherwise provide[s]"
 that the District may post its own lands to prohibit hunting and trapping,
 and thus, the prohibition in § 2295 does not apply. Section 2295
 explicitly refrains from superseding contrary statutory provisions, so even
 if we were to conclude that posting land against hunting and trapping was
 "direct regulation," there would be nothing in the statute to prevent
 municipalities from posting their land. 

 ¶ 13. Allowing these two provisions to coexist seems entirely
 consistent with the purposes of § 2295. Without question, the Legislature
 intended to prevent a town from banning hunting on private property, as
 well as from issuing hunting licenses, collecting associated fees, or
 setting rules for hunting within the town. Such regulation would risk
 interference not only with the State's regulatory prerogatives, but also
 with the private property rights protected by Chapter II, § 67 of the
 Vermont Constitution. Neither of these concerns is implicated when a town
 sets conditions on the use of its own land. A town's restrictions on
 hunting in a public park do not interfere with anyone's right to hunt or
 allow hunting on his or her own property, and they fit within the State's
 regulatory regime just as well as any other property owner's posting
 pursuant to 10 V.S.A. § 5201. It is consistent for the Legislature to
 prohibit direct regulation of hunting and trapping, as it has through 24
 V.S.A. § 2295, but also entitle municipalities to manage their own lands in
 the interests of recreation and conservation, as it has through 10 V.S.A.
 §§ 6301-6309. Because the District owns or leases all of the land within
 its boundaries, its management practices have the effect of banning hunting
 and trapping throughout those boundaries, but the Legislature has not
 prohibited the District from managing its land in that way. Thus, we
 conclude that the District's actions in posting its own land to ban hunting
 and trapping are not only affirmatively authorized by the Legislature, but
 also free of any statutory or constitutional prohibition.
 
 II.

 ¶ 14. Our conclusion above makes it unnecessary to address HAT's
 assertion that the superior court relied on evidence outside the record and
 failed to order necessary discovery. HAT contends that the court drew
 conclusions with respect to the safety of hunting and trapping within the
 District that were not supported by the undisputed facts. While this may
 be true, the court did not rely on those conclusions in reaching its
 ultimate decision. The court made certain statements indicating that
 hunting on the District's lands would be unsafe, but it based its legal
 conclusion on the fact that the District owns the lands in question, and
 possesses the same right to post against hunting and trapping as does a
 private landowner. This conclusion did not require any consideration of
 whether it would be safe to hunt on the District's lands. The District
 could consider that question in determining whether to post its lands
 against hunting, as could any other landowner. We are not concerned here,
 however, with the District's balancing of the often competing interests of
 recreation, conservation, and safety. Instead, we are concerned only with
 the District's legal authority to engage in such balancing when doing so
 implicates the interests of Vermont's hunters. We agree with the superior
 court that the District possesses such authority with respect to its own
 lands, and thus, we need not determine whether the court erred in its
 consideration of evidence. 

 III.
 
 ¶ 15. We next address HAT's contention that the superior court
 should not have dismissed its challenge to the District's firearm
 possession ban as moot. During the pendency of the action, the District
 began altering its signs and publications to reflect its policy of
 allowing, instead of prohibiting, the possession of firearms on its
 property. HAT argues that its claim is still live because the District
 continues to assert the right to ban possession of firearms, as opposed to
 regulating only the discharge of firearms. "[A] case becomes moot when the
 issues presented are no longer live or the parties lack a legally
 cognizable interest in the outcome." Doria v. Univ. of Vt., 156 Vt. 114,
 117, 589 A.2d 317, 319 (1991) (quotations omitted). An actual controversy
 must exist at all stages of the case, "not merely at the time the plaintiff
 originally filed the complaint." Id. HAT's claim is moot because the
 policy the claim challenges no longer exists. 

 ¶ 16. HAT argues that despite its mootness, its claim should survive
 because it fits within the narrow exception allowing review of moot claims
 that are "capable of repetition, yet evading review." Id. at 118, 589 A.2d
 at 319 (quotations omitted). The test for this exception requires, first,
 that " 'the challenged action [must be] in its duration too short to be
 fully litigated prior to its cessation or expiration,' " and second, that "
 'there [must be] a reasonable expectation that the same complaining party
 [will] be subjected to the same action again.' " State v. Tallman, 148 Vt.
 465, 469, 537 A.2d 422, 424 (1987) (quoting Weinstein v. Bradford, 423 U.S.
 147, 149 (1975)). HAT's claim meets neither requirement. In the event the
 District chooses to reinstate its policy following the completion of this
 action, HAT provides no reason why it would not be able to challenge the
 policy effectively. More importantly, HAT fails to demonstrate any
 expectation that the District will reinstate the policy. HAT ignores the
 District's repeated statements that it does not intend to regulate the
 carrying of firearms on its lands. Instead, it focuses on a single
 statement by the District that despite its decision to change the policy,
 it does not concede that it lacks authority to regulate the possession of
 firearms on its lands. We agree with the superior court that this
 statement alone does not provide cause to allow HAT to continue pursuing
 its moot claim. 
 
 IV.

 ¶ 17. As a final matter, we must address HAT's contention that the
 court erred by failing to rule on its motion to amend its complaint to add
 further claims against the District. We review this issue according to an
 abuse of discretion standard. Bevins v. King, 143 Vt. 252, 254-55, 465
 A.2d 282, 283 (1983). The superior court did not explicitly deny HAT's
 motion, and it did not offer any reasoning supporting such a denial, but we
 assume that the court intended to deny HAT's motion, since it entered final
 judgment dismissing the entire action. Vermont Rule of Civil Procedure
 15(a) provides that a party may amend its pleadings by leave of the court,
 and that "leave shall be freely given when justice so requires." The
 court's decision whether to grant permission to amend is discretionary, but
 "[w]hen there is no prejudice to the objecting party, and when the proposed
 amendment is not obviously frivolous nor made as a dilatory maneuver in bad
 faith, it is an abuse of discretion to deny the motion." Bevins, 143 Vt.
 at 254-55, 465 A.2d at 283. As the three additional causes of action
 raised by the proposed amended complaint were all either without merit or
 disposed of by the court's summary judgment ruling, it would have been
 within the court's discretion to deny HAT's motion to amend.
 
 ¶ 18. First, HAT's amended complaint attempts to convert the moot
 claim based on the District's prohibition of firearm possession from a
 request for injunctive relief to a declaratory judgment action. 
 Declaratory relief is available only when there is an actual or justiciable
 underlying controversy; otherwise, "a declaratory judgment is merely an
 advisory opinion which we lack the constitutional authority to render." 
 Doria, 156 Vt. at 117, 589 A.2d at 318. As we have concluded above, there
 was no longer a justiciable controversy once the District changed its
 policy, and HAT provided no basis for concluding that there was a "threat
 of actual injury to a protected legal interest." Town of Cavendish v. Vt.
 Pub. Power Supply Auth., 141 Vt. 144, 147, 446 A.2d 792, 794 (1982)
 (stating that declaratory relief is available only if there is a threat of
 injury). The superior court's initial ruling that there was no justiciable
 controversy regarding the firearm possession ban was sufficient to dispose
 of this count of the amended complaint.

 ¶ 19. Second, HAT's amended complaint adds a claim that the
 District, by exercising the authority of its member municipalities to
 regulate hunting and trapping, "circumvent[ed] the requirements of the due
 process of law by either: 1) enacting regulations the municipalities
 standing alone could not legitimately promulgate; or 2) assigning the
 limited legislative rights granted to these municipalities by the
 Legislature to unelected boards and administrative appointees." The
 superior court concluded, in its summary judgment ruling, that the District
 was acting pursuant to its statutory authority to act as a landowner in
 posting its land against hunting and trapping. This conclusion precludes
 any claim that the District's actions were an attempt to "circumvent" due
 process. The municipalities participating in the District's formation had
 the authority to take the actions the District took, as well as the
 authority to form the District as they did. HAT's new claim simply
 rephrases, using the terminology of due process, its principal claim that
 the District lacked legal authority to regulate hunting. The superior
 court would have been within its discretion to deny HAT's motion to amend
 its complaint by adding this claim. 
 
 ¶ 20. Finally, HAT included a claim that the District, by using
 public funds for "private, exclusionary purposes," violated Vermont's
 Consumer Fraud Act. AB 17 This claim lacks merit on its face. The
 District's rules certainly exclude hunting as a permissible use of the
 land, but the same rules apply to every member of the public, and the
 District continues to allow any member of the public to use the land. HAT
 alleges that the District's hunting ban was implemented for some private
 purpose, but it does not identify any purpose for the District's hunting
 ban that is not among the permissible objectives of public land management. 
 We have held that the District was within its rights to place conditions on
 the use of its lands, which the Legislature has explicitly authorized the
 District to manage in the interest of conservation, among other interests. 
 Whether or not HAT agrees with the District's policies, the District's
 exclusion of one possible use of publicly owned land is not inherently
 fraudulent or discriminatory. It would not have been an abuse of the
 superior court's discretion to deny HAT's motion to amend its complaint to
 add this claim. The court was therefore correct to enter final judgment
 against HAT after having granted summary judgment to the District on the
 claims in HAT's original complaint.

 Affirmed. 


 FOR THE COURT:


 _______________________________________
 Associate Justice


------------------------------------------------------------------------------
 Concurring


 ¶ 21. BURGESS, J., concurring in result. I agree that a municipal
 park district, like any landowner, may post its land against hunting and
 trapping pursuant to 10 V.S.A. § 5201. I do not agree, however, with the
 majority's proposition that the Legislature has delegated its pervasive
 regulation of hunting and trapping to the District for conservation
 purposes. Even if it were apparent how a total ban on hunting and trapping
 serves a rational wildlife conservation interest, absent a more explicit
 delegation to the District, that topic seems entirely preempted by the
 Legislature's comprehensive regulatory scheme in that regard. See 10
 V.S.A. Chapters 101-123; App. §§ 2-48. (FN1) The majority characterizes
 the posting of land under 10 V.S.A. § 5201(a) as an enforcement
 "proceeding" available to the District by virtue of its landowner status
 pursuant to 10 V.S.A. § 6307, ante ¶ 11, but there is no "proceeding"
 necessary to post lands except, perhaps, a trip to the hardware store. Nor
 does it appear how posting a ban on hunting and trapping serves the
 statutory purpose of 10 V.S.A. § 6301 "to preserve and to enhance Vermont's
 scenic natural resources," as understood by the majority, unless it is to
 enhance the observation of such scenic resources by preserving the
 observers from hunting and trapping mishaps. Such interpretive efforts are
 strained, at best, and appear unnecessary when there is a more direct route
 to the same common sense end.
 
 ¶ 22. Defendant District is a "union municipal district" that "may
 hold and convey real . . . property for the use of the district," 24
 V.S.A. § 4865, and, in pertinent part, is possessed of all powers enjoyed
 "by any of its participating municipalities." 24 V.S.A. § 4866(8)
 (emphasis added). Most of the municipal members are expressly authorized
 by their legislative charters to establish parks, (FN2) and plaintiff's
 complaint alleges, without challenging its validity, that the declared
 purpose of the District's charter under 24 V.S.A. § 4865 includes
 "recreation, [and] establishment of parks." All Vermont municipalities are
 authorized to acquire and preserve undeveloped land. 10 V.S.A. §§ 6301 and
 6302(a). 

 ¶ 23. Dillon's Rule not only limits municipalities to "those powers
 and functions specifically authorized by the legislature" as argued by
 plaintiffs in this instance, but is also authority for the implied
 "additional functions as may be incident, subordinate or necessary to the
 exercise" of such express powers by the municipality. Hinesburg Sand &
 Gravel v. Town of Hinesburg, 135 Vt. 484, 486, 380 A.2d 64, 66 (1977). 
 Having established the recreation or park area in this case, the District
 must then have at least implied authority to ban hunting and trapping
 within as incident and necessary to its management of the area. Owning and
 controlling the same land, and absent legislative command to the contrary,
 the District should also be independently able to post its land under 10
 V.S.A. § 5201. The statutory proscription that no municipality "shall
 directly regulate hunting . . . and trapping" is expressly preconditioned
 by the phrase "[e]xcept as otherwise authorized by law." 24 V.S.A. § 2295
 (emphasis added). By its own terms, the prohibition is subordinate to the
 law of Dillon's Rule and the posting statute, and presents no impediment to
 the District's ban on hunting and trapping within the park. (FN3) 
 
 ¶ 24. Plaintiff's argument that a landowner's right to post land
 under 10 V.S.A. § 5201 can never extend to a municipal landowner, because
 municipalities are foreclosed from regulating hunting and trapping on
 public lands by 24 V.S.A. § 2295, is not persuasive. It is not disputed
 that the District owns most, and leases small amounts, of the land at
 issue. The right to post lands is statutorily granted to any "owner" of
 land, or "person" enjoying "exclusive control" over lands, 10 V.S.A. § 5201
 (a), and the statutory term "person" is expressly defined to include a
 "municipality." 1 V.S.A. § 128. (FN4) Applying § 2295 to bar posting, as
 proposed by plaintiff, ignores that statute's express excepting clause,
 Dillon's Rule and 10 V.S.A. § 5201(a). Plaintiff's construction of the
 statute would preclude cities, towns and villages from prohibiting trapping
 and non-firearm hunting within public parks, commons, swimming pools and
 the like, leaving citizens (and their dogs and children) to wear bright
 orange, to duck and to watch their step when walking, biking, snowshoeing,
 skiing, feeding pigeons, swimming or playing sports within municipal parks
 and recreation fields. This kind of overbroad statutory construction "that
 leads to absurd consequences must always be avoided if possible." Riley v.
 Riley's Estate, 114 Vt. 297, 300, 44 A.2d 153, 155 (1945).

 ¶ 25. Accordingly, plaintiff's construction should be rejected and
 the judgement below should be affirmed.



 _______________________________
 
 Associate Justice



------------------------------------------------------------------------------
 Footnotes


FN1. The majority's citation of 10 V.S.A. § 6307, ante ¶ 10, enabling
 municipalities to "institute injunction proceedings . . . and take all
 other proceedings as are available to an owner of real property under the
 laws of this state to protect and conserve its right or interest," reflects
 a clear legislative intent that a municipality may seek legal redress or
 enforcement of its rights as a landowner, but is no delegation of
 legislative authority over wildlife conservation.

FN2. 24 V.S.A. App. Ch. 3, § 48(36) (Burlington); Ch. 113, §103(c)
 (Colchester); Ch 117, §103(b) (Essex); Ch. 13 § 103(b) (South Burlington)
 and Ch 17, § 2.4 (b)(1) (Winooski). There is no charter for Jericho
 Village, Ch. 231 reserved; while the Williston charter is silent about
 parks, but provides that Williston "may acquire real property." Ch.156 §
 9(b).

FN3. The statute continues to prohibit a municipality's direct regulation of
 hunting and trapping upon private lands within municipal boundaries.

FN4. "In the construction of statutes," this definition "shall be observed,
 unless such construction is inconsistent with the manifest intent of the
 general assembly or repugnant to the context of the same statute." 1
 V.S.A. § 101. Nothing in 10 V.S.A. § 5201 is repugnant to the inclusion of
 municipalities as persons owning or controlling lands. Given the excepting
 clause in 24 V.S.A. § 2295, and the absurd result otherwise, see infra,
 nothing in that statute is manifestly contrary to following the statutory
 definition including a municipality as a "person" entitled to post land
 under 10 V.S.A. § 5201.