2008 VT 107

# David S. Chase, M.D. v. State of Vermont, Agency of Human Services, Department of Health, Board of Medical Practice, John Howland, et al.

[966 A.2d 139]

No. 07-217

Present: Reiber, C.J., Johnson, Skoglund and Burgess, JJ., and Martin, Supr. J. (Ret.), Specially Assigned

Opinion Filed August 14, 2008

*Eric S. Miller* and *Ian P. Carleton* of *Sheehey Furlong & Behm P.C.*, Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Bridget C. Asay*, Assistant Attorney General, Montpelier, for Defendants-Appellees.

¶ 1. **Reiber, C.J.** This appeal arises out of a Medical Practice Board disciplinary proceeding against Dr. Chase for alleged unprofessional conduct. Prior to final adjudication by the Board, Dr. Chase filed a six-count complaint in the superior court, claiming that his due process rights had been violated during the Board's preliminary proceedings. Dr. Chase sought a declaratory judgment and a permanent injunction requiring dismissal of the Board's charges. The Washington Superior Court dismissed all six counts, finding that they were within the primary jurisdiction of the Board, see *Travelers Indem. Co. v. Wallis*, 2003 VT 103, ¶¶ 14-18, 176 Vt. 167, 845 A.2d 316 (discussing doctrine of primary jurisdiction), and reviewable only by this Court. See 26 V.S.A. § 1367 ("A party aggrieved by a final order of the [B]oard may, within 30 days of the order, appeal that order to the Vermont [S]upreme [C]ourt on the basis of the record created before the [B]oard."). On appeal, Dr. Chase challenges the superior court's application of the primary jurisdiction doctrine. While this appeal was pending, the Board issued a final judgment and sanctions on the very charges Dr. Chase prayed for the superior court to dismiss. We dismiss his claims seeking declaratory and injunctive relief as moot. Because the Board proceedings are no longer pending, however, we remand for consideration of Dr. Chase's claims for money damages in counts three and five of his complaint.

¶ 2. The relevant facts are as follows.[1] Dr. Chase, a resident of Shelburne, Vermont, practiced general ophthalmology and eye surgery in Burlington for over thirty years. On July 20, 2003, the State moved to summarily suspend Dr. Chase's medical license for allegedly recommending and performing cataract surgeries that were not medically necessary. The State's motion was based in part on the sworn written statement of one of Dr. Chase's former staff members (affiant), who alleged that Dr. Chase had purposefully falsified medical records to "force patients into cataract surgery." This affidavit contained other incriminating accusations. At the summary-suspension hearing, the State represented to the Board that Dr. Chase had engaged in willful misrepresentation in treatments, willful falsification of reports and records, and immoral, unprofessional, and dishonest conduct. Dr. Chase notes that at this hearing neither party was allowed to present evidence or cross-examine witnesses. The State recommended immediate suspension of Dr. Chase's license to practice medicine. See 3 V.S.A. § 814(c) (allowing summary suspension of medical license without evidentiary hearing "[i]f the agency finds that public health, safety, or welfare imperatively requires emergency action").

¶ 3. During the summary-suspension hearing, Dr. Chase denied the State's allegations, but offered to voluntarily cease recommending or performing cataract surgeries until the investigation was complete. He argued that complete suspension of his license to practice medicine was a remedy broader than necessary to protect the public from the violations alleged by the State — all of which related to the surgical aspects of his practice. The Board disagreed with Dr. Chase and summarily suspended his license.

---

[1] Dr. Chase filed a motion to strike parts of the State's brief and supplemental printed case. The disputed material therein includes various Board filings and decisions that were filed in the superior court as attachments in opposition to Dr. Chase's motion for preliminary injunction. Dr. Chase concedes that these materials are technically part of the record on appeal. See V.R.A.P. 10(a) (record on appeal includes "[t]he original papers and exhibits filed in the superior or District Court"). Citing *Travelers*, Dr. Chase instead argues that the information cannot be considered under the V.R.C.P. 12 standard for a motion to dismiss. 2003 VT 103, ¶ 7 (the court must "take[] all uncontroverted factual allegations of the complaint as true and constru[e] them in the light most favorable to the nonmoving party"). Because the materials are part of the record on appeal, and because our decision does not involve a Rule 12 analysis, we dismiss this motion as moot. See *Chase v Bowen*, 2008 VT 12, ¶ 13 n.2, 183 Vt. 187, 945 A.2d 901 (dismissing a motion to strike when the Court did not need to consider any of the challenged materials or references to reach its decision).

No post-suspension evidentiary hearing was held to consider the propriety of the summary suspension because the Vermont Administrative Procedure Act, 3 V.S.A. § 814, does not require such a hearing, although it does require generally that "proceedings shall be promptly instituted and determined."

¶ 4. On December 1, 2003, the State filed a superseding specification of charges, alleging 136 counts of unprofessional conduct related to thirteen separate patients to whom Dr. Chase recommended cataract surgery. During discovery, Dr. Chase's attorneys contacted the State's identified witnesses to begin the interviewing process. According to Dr. Chase, the State told the witnesses that they should not speak with Dr. Chase's attorneys unless the State was present. The State's efforts, according to Dr. Chase, were designed to interfere with his ability to conduct private interviews. Dr. Chase's attorneys, however, eventually conducted depositions. During these depositions, Dr. Chase began to suspect that the State's investigator had falsified key portions of the affiant's sworn written statement. According to Dr. Chase, the investigator knowingly and materially misrepresented the affiant's testimony. Dr. Chase notes that the affiant indicated during her deposition that she did not make many of the most serious allegations attributed to her, and that she either did not believe as true the allegedly falsified statements, or did not know if they were true.

¶ 5. On February 17, 2004, Dr. Chase moved the Board to reinstate his license and to dismiss the charges against him. Dr. Chase argued that the alleged falsification of evidence and the State's interference with the witnesses deprived him of due process. On March 31, 2004, the Board denied the motion to dismiss, but granted the motion to reinstate Dr. Chase's license. On the motion to dismiss, the Board found that "there is not a sufficient connection between the questionable affidavit and the allegations set forth in the [charges] to warrant dismissal, since numerous additional charges have been alleged that are completely independent from the allegations appearing in the affidavit." Regarding the contact with the witnesses, the Board found that the requests from the State did not establish a due process violation, that Dr. Chase had ample opportunity to investigate, and that he was free to conduct depositions, do interviews — privately if a witness so desired — and use the subpoena process if necessary.

¶ 6. As to the summary suspension, the Board found that even if the questionable parts of the affidavit were disregarded, the remainder of the evidence provided sufficient grounds to warrant summary suspension. The Board nonetheless granted Dr. Chase's motion to reinstate his license, stating that "the Board is not satisfied that the summary suspension order is completely free from the appearance of the reliance on questionable material, even if partial." Subsequently, on April 9, 2004, Dr. Chase entered into a consent agreement to refrain from the practice of medicine until final resolution of the charges.

¶ 7. In September 2004, a federal grand jury indicted Dr. Chase on seventy-one counts of federal health-care fraud, alleging that he recommended or performed unnecessary cataract surgery with respect to thirty-six former patients. Dr. Chase argues that the federal investigation into his practice for possible federal criminal health-care fraud was prompted by the press reports regarding his summary suspension. The United States then filed a civil suit against Dr. Chase, seeking damages for the same alleged conduct as was charged in the criminal case. At Dr. Chase's request, the Board stayed its disciplinary proceedings pending the outcome of the federal case. Dr. Chase was eventually exonerated of all the federal charges against him — the court dismissed forty-five of the seventy-one charges, the government dismissed two, and the jury acquitted him on the remaining twenty-four. Subsequently, the government dismissed the federal civil suit.

¶ 8. Between September 11, 2006 and February 8, 2007, the Board conducted a full hearing on the merits of the charges against Dr. Chase. Believing that the Board refused to adequately address potential due process defects in its own proceedings, Dr. Chase did not await the Board's final decision before filing a civil rights action in the Washington Superior Court pursuant to 42 U.S.C. § 1983, the Vermont Tort Claims Act, 12 V.S.A. § 5602, and the Vermont Declaratory Judgment Act, 12 V.S.A. § 4711. Dr. Chase named as defendants the State of Vermont, the Secretary of the Agency of Human Services, the Commissioner of the Department of Health, the Executive Director of the Medical Practice Board, the interim director of the Board, and the investigator employed by the Board. In that action, Dr. Chase alleged six counts of misconduct by defendants. He claimed that defendants violated his constitutional and common-law rights and damaged his medical practice, his right to earn a living as a

physician, and his professional and personal reputation when: (1) the Board summarily suspended his medical license without a hearing after he agreed to voluntarily cease performing surgeries; (2) defendants failed to provide a post-suspension hearing at which he could contest the summary suspension of his license; (3) the investigator falsified evidence in support of the Board's summary suspension and superseding specification of charges, and knowingly submitted the evidence after he was told it was false; (4) the Board suspended his license on the basis of falsified evidence, refused to decide whether the investigator had in fact falsified the evidence, and failed to take action to remedy the effects of the falsification; (5) the interim director invited the media to attend the Board's summary-suspension hearing with the intention of disseminating the allegations against Dr. Chase; and (6) defendants failed in their duty to supervise the investigator and the Board, and to remedy unconstitutional actions. Counts one through five all alleged due process and § 1983 violations.

¶ 9. Dr. Chase sought three remedies on all counts: (1) a preliminary injunction prohibiting any merits hearing from being held until the superior court had ruled on his constitutional claims, (2) a permanent injunction requiring dismissal of charges, and (3) attorney's fees and costs. Counts one through five all alleged due process and § 1983 violations. Counts one, two, three, and five also sought declaratory judgment. Only counts three and five — against the investigator and the interim director respectively — sought money damages. See *Houston v. Town of Waitsfield*, 2007 VT 135, ¶ 7, 183 Vt. 543, 944 A.2d 260 (mem.) ("We will not infer an action for damages where one was not originally presented to the trial court.").

¶ 10. On April 30, 2007, the superior court dismissed all counts pursuant to Rule 12(b)(1) (lack of subject-matter jurisdiction) and the doctrine of primary jurisdiction. Dr. Chase appealed the superior court's dismissal of his complaint, arguing that the superior court incorrectly applied the doctrine of primary jurisdiction. We do not reach this issue, however. Two recent events have rendered it moot: the Board issued its final decision on the merits on December 10, 2007, and the Board issued its final judgment on sanctions on April 4, 2008.[2]

---

[2] The Board dismissed the majority of the 118 counts against Dr. Chase. The Board did find, however, that he committed twenty-one counts of unprofessional

■ ■ ¶ 11. It is well-settled that this Court has jurisdiction to decide only " 'actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction.' " *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)). In order for this Court to have jurisdiction over an appeal, it must present a live controversy *at all stages of the appeal*, and the parties must have a "legally cognizable interest in the outcome." *Doria v. Univ. of Vt.*, 156 Vt. 114, 117, 589 A.2d 317, 319 (1991); *O'Brien v. Brown*, 153 Vt. 652, 652-53, 573 A.2d 295, 296 (1990) (mem.). "Even though there was once an actual controversy, a change in the facts can render an issue or entire case moot." *In re Moriarty*, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991). Importantly, an issue becomes moot "if the reviewing court can no longer grant effective relief." *Id.*

■ ¶ 12. In the case at bar, we are compelled to dismiss Dr. Chase's claims seeking an injunction against the Board proceedings because neither this Court nor the superior court can grant effective relief. Dr. Chase prayed specifically for the superior court to "enter a permanent injunction requiring the Medical Practice Board to dismiss the Super[s]eding Specification of Charges against [him] as a remedy." Even if we were to conclude that the superior court should not have dismissed Dr. Chase's complaint, the issue is now moot because the proceedings before the Board are completed and there is nothing currently pending that is susceptible to injunction or dismissal. See *Houston*, 2007 VT 135, ¶ 6 (" '[W]here the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot, and it must be dismissed.' ") (quoting *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001)). The superior court cannot enjoin a Board investigation that is already complete. Nor can we. Thus, we dismiss these claims as moot.[3]

conduct. *In re Chase*, No. MPC 15-0203, et al. (Dec. 10, 2007). The Board later ordered that reinstatement of Dr. Chase's medical license be conditioned on his satisfactory completion of three medical courses, engagement with an expert consultant, and one year of supervised practice. *In re Chase*, No. MPC 15-0203, et al. (Apr. 4, 2008).

[3] In its final decision, the Board specifically addressed Dr. Chase's motion to dismiss on the grounds of misconduct by the State. The Board concluded that "[w]hile the evidence certainly indicates that mistakes were made, the evidence

¶ 13. Dr. Chase also sought "a binding resolution" regarding this controversy in the form of a declaratory judgment. See 12 V.S.A. § 4711 (granting courts the "power to declare rights, status and other legal relations"). To the extent that Dr. Chase sought to compel the Board's dismissal of the charges via a declaratory judgment, the above mootness analysis applies — such a declaration, if it had any effect at all, would be indistinguishable from an injunction, which the courts are unable to provide at this time. And if the declaratory judgment would *not* bind the Board, it would be a mere advisory opinion, which we lack the constitutional authority to render. See *Lace v. Univ. of Vt.*, 131 Vt. 170, 175, 303 A.2d 475, 478 (1973). The purpose of a declaratory judgment is to "provide a declaration of rights, status, and other legal relations of parties to an actual or justiciable controversy." *Robtoy v. City of St. Albans*, 132 Vt. 503, 504, 321 A.2d 45, 46 (1974). Thus, declaratory relief is available when a party is suffering from "the threat of actual injury to a protected legal interest." *Town of Cavendish v. Vt. Pub. Power Supply Auth.*, 141 Vt. 144, 147, 446 A.2d 792, 794 (1982). In the present case, even if Dr. Chase's constitutional rights were violated as he alleges, the Board's decision has already issued, and there is no impending future threat. Declaratory judgment would serve no useful purpose, and is inappropriate in such cases. See *Doria*, 156 Vt. at 117, 589 A.2d at 318-19 ("The election involved is long over, and the poll has no continuing relevance. As a result, there is no justiciable controversy, and declaratory relief is not an appropriate remedy."). Furthermore, "[t]he judiciary is not empowered to render advisory opinions the sole purpose of which is to aid in the resolution of a dispute that properly belongs in another tribunal." *Williams v. State*, 156 Vt. 42, 59, 589 A.2d 840, 850 (1990). Assuming that his constitutional claims were raised and preserved before the Board, it is for this Court, and not the superior court in a declaratory judgment action, to decide whether his constitutional rights were violated in the proceedings before the Board. 26 V.S.A. § 1367.

---

does not establish that the State was intentionally falsifying evidence or perpetrating a fraud upon the Board." Contrary to Dr. Chase's assertion that the superior court's dismissal of his claims "leaves . . . no avenue of redress for [defendants'] patently unconstitutional actions," our decision does not deprive Dr. Chase of opportunity to have the Board's final decision reviewed. Indeed, Dr. Chase's appeal from the final decision has already been docketed in this Court.

¶ 14. Next, Dr. Chase argues that § 814(c) facially violates the Due Process Clause by failing to provide a reasonably prompt post-suspension hearing to contest the propriety of the summary suspension.[4] Noting that "the statute itself provides that 'proceedings shall be promptly instituted and determined,' " the superior court concluded that Dr. Chase challenged only the implementation of the statute, and not the statute on its face. Because facial challenges to statutes must be heard by courts, not administrative agencies, see *Travelers*, 2003 VT 103, ¶ 10, Dr. Chase argues that the superior court erred first in characterizing his claim as only an as-applied challenge, and second in subsequently dismissing his claim. Dr. Chase is correct that the court mischaracterized his claim. The "proceedings" mentioned in the portion of § 814(c) cited by the superior court are the merits-hearing proceedings, not the summary-suspension proceedings. Dr. Chase did not claim that the Board failed to provide a prompt merits hearing. Instead, he argued that due process requires a prompt post-suspension hearing where he "could test the accuracy of the State's allegations and the decision to summarily suspend his license." He cites other states that grant licensees the opportunity to contest a summary suspension prior to the eventual hearing on the merits.[5] Dr. Chase sought a declaration from the superior court that the absence of a similar provision in the Vermont statute violated the Due Process Clause.

¶ 15. Although Dr. Chase asserted a sufficient facial challenge to this statute, this claim is also now moot. Dr. Chase is not currently under summary suspension, and, after the Board reinstated his license, Dr. Chase voluntarily consented to refrain from the practice of medicine until the Board proceedings were completed. Declaration of the constitutionality of the summary-suspension procedures under § 814(c) would not affect any of Dr. Chase's presently cognizable legal interests.

¶ 16. The "capable of repetition, but evading review" exception to the mootness doctrine does not apply here. *In re*

---

[4] The Due Process Clause states, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

[5] For instance, Massachusetts requires "a hearing on the necessity for the summary action within seven days after the suspension." 243 Mass. Code Regs. 1.03(a).

*Green Mountain Power Corp.*, 148 Vt. 333, 335, 532 A.2d 582, 583 (1987). Under that exception, the challenged action must be too short in duration to be fully litigated prior to its cessation or expiration, and there must be a reasonable expectation that the same party will be subject to the same action again. *Id.* at 335, 532 A.2d at 584. A "reasonable expectation" is more than a theoretical possibility that the party could be subject to the same action again; the party must show a "demonstrated probability." *Id.* Dr. Chase has not suggested that he is likely to be subject to another summary suspension or disciplinary proceeding. See *In re P.S.*, 167 Vt. 63, 68, 702 A.2d 98, 101 (1997) (exception to mootness doctrine does not apply when the repetition of the fact pattern is unlikely).

¶ 17. Dr. Chase asks us to recognize the principle announced in *Dunham v. Roer*, 708 N.W.2d 552, 563 (Minn. Ct. App. 2006), that "[w]hen a facial challenge is made . . . the fact that a particular litigant is not subject to enforcement proceedings does not render the facial challenge moot." We find this case to be unpersuasive here. *Dunham* involved a facial challenge to Minnesota's harassment statute on the grounds that it violated the free-speech guarantees of the First Amendment. The exception to mootness carved out by *Dunham* is inextricably tied to the "chilling effect" that a statute in violation of the First Amendment may have on expression in the future. *Id.* at 564. In that case, the court found that the "very existence of the . . . statute raises the possibility that others may refrain from free speech or expression." *Id.* at 563. In the instant case, however, no compelling constitutional interests are harmed by the mere existence of the statute, and we must therefore dismiss as moot Dr. Chase's facial challenge because he is not currently subject to enforcement proceedings under the statute.

¶ 18. Finally, Dr. Chase sought money damages for two counts of alleged constitutional violations. The merits of the claims for money damages in counts three and five may now be considered by the superior court. The Board was in no position to (and did not) decide the potential liability of these individual defendants to Dr. Chase. The superior court indicated that the outcome of the Board proceedings could affect the scope of the damages and that such claims should therefore await the conclusion of the Board proceeding. Now that the Board has issued its final decisions and

this impediment is lifted, we remand these claims for consideration.

*Dismissed in part and remanded in part for proceedings consistent with this opinion.*