STATE OF VERMONT

SUPERIOR COURT                              ENVIRONMENTAL DIVISION

|  |  |
|---|---|
| | } |
| In re Omya Solid Waste Facility | } |
|      Interim Certification and | } Docket No. 273-11-08 Vtec |
|      Final Certification | } Docket No. 96-6-10 Vtec |
| (Appeals of Shaw & Brod, formerly | } |
|  Appeals of Residents Concerned about Omya[1])} | |
| | } |

### Decision and Order on Omya Motion to Dismiss, and on RCO Motion to Amend Notices of Appeal and for Joinder of Individual RCO Members

In Docket No. 273-11-08 Vtec, Appellant Residents Concerned about Omya appealed from a decision of the Vermont Agency of Natural Resources to grant interim certification to Omya, Inc. to operate for two years its unlined tailings management areas (TMAs) at its Verpol Site in the village of Florence, in the town of Pittsford, Vermont. In Docket No. 96-6-10 Vtec, Appellant appealed from a decision of the ANR to grant final certification to Omya, Inc.'s lined tailings management solid waste disposal facility (TMF) at the same site.

Original Appellant Residents Concerned about Omya (RCO) and Intervenor-Appellants Susan Shaw and Ernest Brod (Intervenors) are now represented by Sheryl Dickey, Esq., of the Environmental Law Clinic of the Vermont Law School. Appellee-Applicant Omya, Inc. (Applicant or Omya) is represented by Edward V. Schwiebert, Esq., and Hans Huessy, Esq. The Vermont Agency of Natural Resources (ANR) is represented by Catherine Gjessing, Esq. and Matthew Chapman, Esq. Amicus curiae Vermont Natural Resources Council (VNRC) is now represented by Jamie Fidel, Esq.

---

[1] See pp. 7–8, below.

Procedural History and Factual Background

Applicant owns and operates a calcium carbonate processing facility, referred to as the Verpol site, at which it produces calcium carbonate by grinding up and processing marble. The tailings or waste products of this process have historically been placed in unlined disposal pits, referred to in the certifications as Tailings Management Areas (TMAs). Groundwater beneath the Verpol site itself contains aminoethylethanolamine, a residual chemical component of the flotation agent used by Omya in its processing operations, as well as containing elevated concentrations of the elements iron, manganese, and arsenic. In some tests of off-site groundwater, iron and manganese have been detected at concentrations in excess of secondary groundwater standards, although such concentrations are similar to those typically found in area groundwater. Aminoethylethanolamine and arsenic have not been detected in excess of groundwater standards beyond the boundary of the Verpol site. Extensive facts and studies have been developed by the parties regarding the monitoring, chemistry, and risk assessment for these substances in groundwater; these facts are not undisputed but also are not required to resolve the motions before the Court in this decision.

Residents Concerned about Omya (RCO) is an unincorporated association of more than ten individuals, formed in 2002 with the assistance of an organization called the Toxics Action Center.[2] In response to Omya's motion to dismiss, RCO provided affidavits of five of its members detailing their particularized interests potentially affected by the tailings disposal at the Verpol site. In response to the

_____

[2] No information has been provided to the Court about the Toxics Action Center. A single page from the "Current Campaigns" page of its newsletter for "Spring/Summer 2003" states that it has four offices in New England. That page characterizes its assistance to the formation of "Residents Concerned About OMYA" as having been for the purpose of "shin[ing] the spotlight" on Omya's proposed tailings management facility and "halt[ing] the proposal" for that facility.

Court's November 16, 2010 decision in the present appeals (November 2010 Decision), RCO provided an additional affidavit from one of those members, with related attachments. RCO has provided no organizing documents, pamphlets, flyers, website information or other electronic communications such as a blog or emails, suggesting how the organization makes decisions as to litigation or policy, or how it manages decisions regarding funding of its activities.

Three of RCO's individual members, together with RCO, brought a citizen suit in federal district court in late June of 2005 under the federal Resource Conservation and Recovery Act, alleging the "'open dumping' of chemically-contaminated solid waste" in violation of that federal statute.[3]

On August 15, 2005, Omya applied to the ANR for interim certification of its unlined tailings management areas. On October 21, 2008, the ANR issued the interim certification, which by its terms expired on October 21, 2010. The interim certification is the subject of Docket No. 273-11-08 Vtec.

On May 8, 2009, Omya applied for 5-year final certification of its proposed lined tailings management facility, and the schedule in Docket No. 273-11-08 Vtec was suspended by agreement of the parties, except for the filing of Appellants' Motion for Summary Judgment, until the final certification was ruled on by the ANR. On May 6, 2010, the ANR approved final certification of the proposed facility, and, in mid-October, 2010, approved an amendment to the final certification.[4] The

---

[3] The fact that that lawsuit was later resolved in favor of Omya is not relevant to the organization's standing as a party plaintiff on behalf of its members. However, as the federal lawsuit had individual plaintiffs as well, the standing of RCO as an organization may not have been raised as an issue. In fact, the dismissal order provided by Omya as Exhibit 1 to the Laurent Affidavit filed September 27, 2010, states, at 1, that "Plaintiffs are residents who live near the quarry."

[4] The final certification and its October 2010 amendment address the capping and closure of the unlined tailings, or their remaining in place below the TMF, as part of the final rather than the interim certification.

3

parties agreed that the amendment should be considered within the existing final certification appeal. The final certification, as amended, is the subject of Docket No. 96-6-10 Vtec.

RCO, represented by the Environmental Law Clinic of the Vermont Law School, provided comments in 2006 on proposed amendments to the Vermont Solid Waste Management Rules, and provided comments in 2008 and 2009 on the interim and final certifications that are the subject of the present appeals.

Mootness of Expired Interim Certification Decision

In de novo appeals such as the present ones, the Court sits in place of the Agency of Natural Resources to consider the application that was the subject of the appeal, limited in scope to the issues raised in the statement of questions.[5] V.R.E.C.P. 5(f), (g); In re Appeals of Garen, 174 Vt. 151, 156 (2002).

Omya suggests, in its Memorandum of Law in Opposition to RCO's Motion for Summary Judgment, at 24, that any issues related to the interim certification would become moot after the expiration of the interim certification on October 21, 2010. RCO did not address this issue in its reply memoranda.

The Vermont constitution limits courts to deciding only actual, live controversies between adverse litigants; courts may not issue merely advisory opinions. In re Keystone Development Corp., 2009 VT 13, ¶ 7, 186 Vt. 523. The case "must present a live controversy *at all stages of the appeal,* and the parties must have a 'legally cognizable interest in the outcome.'" Chase v. State, 2008 VT 107, ¶ 11, 184 Vt. 430 (emphasis in original) (quoting Doria v. Univ. of Vt., 156 Vt. 114, 117 (1991)). Otherwise, the issue is moot, as the court "can no longer grant effective relief." In re Unnamed Defendant, 2011 VT 25, ¶ 2 (mem.) (quoting Houston v. Town of

---

[5] In the present cases, the legal issues raised in the two Statements of Questions are identical.

4

Waitsfield, 2007 VT 135, ¶ 5, 183 Vt. 543 (mem.)).

The expiration of a permit that is the subject of an appeal will render the appeal moot unless the issue before the court falls within an exception to the mootness doctrine. See, e.g., National Parks Conservation Ass'n, Inc. v. U.S. Army Corps of Engineers, 574 F.Supp.2d 1314, 1319-21 (S.D. Fl. 2008) (expiration of Clean Water Act permit and accompanying biological opinion rendered appeal moot); Gilbert v. Endres, 824 N.Y.S.2d 696 (N.Y. App. Div. 2006) (mem.) (expiration of special use permit rendered proceeding moot).

In the present case, the interim certification has expired and the appeal of it appears to be entirely moot. RCO has not shown that this case falls under the types of cases that reject the mootness doctrine despite an expired permit. See, e.g., National Parks Conservation Assn., 574 F.Supp.2d at 1322–23. Nor has it shown that an exception to the mootness doctrine is applicable, either due to continuing negative collateral consequences or because the circumstances of the case, with regard to the complaining party, are capable of repetition yet would evade review. Unnamed Defendant, 2011 VT 25, ¶¶ 3–4.

Therefore, Docket No. 273-11-08 Vtec, as to the interim certification, has become moot and is hereby DISMISSED. The remainder of this decision will address party status only as to the final certification.

Motion to Dismiss for Lack of RCO Party Status

As explained in the November 2010 Decision, appeals of ANR decisions are governed by 10 V.S.A. § 8504 and V.R.E.C.P. 5, which accord an appellant party status unless the Court otherwise determines on its own motion or on the motion of a party. Omya had moved to dismiss the appeals based on RCO's lack of standing and for failure to state a claim upon which relief can be granted. The Court ruled in the November 2010 Decision that an informal, unincorporated association could

potentially qualify for organizational standing, and that RCO met two of the requirements to have standing as an organization—that one or more of its members has standing individually, and that the claim and relief requested do not require the participation of the organization's individual members.

However, prior to the November 2010 Decision, RCO had not provided enough information to allow the Court to rule on the requirement that the interests RCO asserts on behalf of its members must be germane to its organizational purpose. In the November 2010 Decision, the Court ruled that, although the five RCO members' affidavits showed that their reason for participating in the organization was their concern about the potential environmental effects of Omya's operations, and although RCO stated in its motion memorandum that it had "formed in response to concerns over Omya's improper and unregulated waste disposal practices and its impact on local water resources":

> RCO has not provided any supporting documents, references to websites, or affidavits to the Court regarding RCO's organizational purpose, or, indeed, whether it is a sufficiently defined organization to have an organizational purpose.

The Court gave RCO the opportunity to supplement its filings regarding its organizational purpose before it would rule on Omya's motion to dismiss regarding RCO's standing. The November 2010 Decision set a deadline for any such supplemental materials and, if RCO intended to file any motion to substitute individual members as party-appellants, required any such motion to be filed by the same deadline; that deadline was changed to December 8, 2010, by a subsequent entry order. The same entry order set December 15, 2010, for the filing of any responses to any materials or memoranda filed by December 8, 2010. Neither the

6

November 2010 Decision nor the later entry order set a date for any replies.[6]

As noted in the November 2010 Decision, at 8, groups of neighbors concerned about a proposed project may adopt an organizational name for ease of reference when commenting on a proposed project or proceeding with litigation, rather than listing specific individuals as named parties. But if the organization is acting on behalf of its members, and seeks organizational standing, rather than just providing a shorthand name for the aggregate of members, it must show that it functions as an organization.

The Court recognizes that informal unincorporated associations may qualify as organizational parties in appropriate circumstances. See, e.g., Vermont Agency of Natural Resources v. Upper Valley Regional Landfill Corp., 159 Vt. 454 (1992). Similarly, informally-run incorporated associations may be able to demonstrate the requisites for organizational standing. See, e.g. Concerned Citizens Around Murphy v. Murphy Oil USA, Inc., 686 F.Supp.2d 663, 675–78 (E.D. La. 2010). It is not the informality of the group that is at issue, but whether it actually functions as an organization on behalf of its members.

In the present case RCO simply has not presented evidence that it functions as an actual organization rather than being a shorthand name for a group of individual residents who live near the Omya facility. If such evidence exists, it has

---

[6] On December 23, 2010, Omya filed a request that the Court disregard the reply memorandum filed by RCO on December 21, 2010; RCO did not respond to Omya's request. As the Court did not prohibit reply memoranda in its November 2010 Decision or in the subsequent entry order, the Court has granted Omya's request in part and denied it in part, as follows. The Court has considered the first section of RCO's December 21, 2010 memorandum, because it deals with and is an additional response to the arguments made by Omya in support of Omya's motion to dismiss RCO for lack of organizational standing. The Court has disregarded the second section of the RCO memorandum, because it relates to and is in support of RCO's own motion for joinder of individual RCO members, and contains arguments that could have been made in RCO's original motion memorandum.

not been presented to the Court in the present case. That is, even after being given additional opportunity to do so, RCO did not provide any written or electronic evidence, in documents or affidavits, of its organizational purpose or how the organization or its members make decisions, especially about litigation, or how they fund the organization, or any of the other indicia of being an organization qualified to speak on behalf of its members. See e.g., id. at 675–76. Rather, the references to RCO in its comments to the ANR or the District Commission, and in the notices of appeal in the present litigation,[7] all refer to it in the plural, as a group of residents.[8] Without evidence that it functions as an organization and participates in litigation on behalf of its members, in the present case RCO lacks organizational standing and must be DISMISSED.

Motion to Amend Notice of Appeal and Motion to Join Two Individual Parties

However, because the notice of appeal in the remaining case, Docket No. 96-6-10 Vtec, does refer to the persons appealing in the plural as the "[r]esidents [who] appeal" and states that in the plural that they "are persons aggrieved pursuant to" the required statutory sections, it is evident that at least the five named members who submitted affidavits in support of RCO's organizational standing themselves had the intent to bring this appeal. As provided in V.R.E.C.P. 5(b)(3),

_____

[7] Both notices of appeal referred to the organization RCO in the plural in two places in each notice, which stated that "Residents Concerned about Omya ("RCO") appeal" and that "RCO are persons aggrieved pursuant to [10 V.S.A. §§ 8502(7), 8503(a)(1)(N), and 8504(a)]" (emphasis added).

[8] To the extent that RCO participated as a group of more than ten residents in any municipal zoning case related to Omya, the Court notes that there is no organizational standing as such in zoning cases. Rather, party status under 24 V.S.A. § 4465(b)(4) is granted to the group of ten (or more) specific individuals who have signed a petition, and, if the group falls below ten, party status under § 4465(b)(4) is no longer available to the group, regardless of whether it has a group name.

8

"[a]n appeal will not be dismissed for . . . failure to name a party whose intent to appeal is otherwise clear from the notice [of appeal]."

Joinder of Susan Shaw and Ernest Brod, two members of RCO, under V.R.C.P. 20 is not appropriate in the present case, as it is an appeal rather than a case commenced by a complaint and answer, and there are no plaintiffs or defendants as contemplated by the rule. In fact, the Court already determined that the individual members of RCO were not required parties to this litigation in its November 16, 2010 decision, at 5. Rather, their affidavits reveal that they qualify for intervention under 10 V.S.A. § 8504(n)(4), if not also under § 8504(n)(6). With the dismissal of RCO as an organizational party, their interests will not otherwise be represented by any party in the litigation. They are therefore granted leave to intervene.

However, they did not themselves file a timely notice of appeal. There is no basis for amending the notice of appeal retrospectively, and Intervenors' Motion to Amend the Notice of Appeal is DENIED. Therefore, although Intervenors may continue with the appeal filed by RCO, they are restricted to the issues raised in RCO's Statement of Questions. Appeals of Garen, 174 Vt. at 156. Moreover, as they have intervened so late in this appeal that all the summary judgment issues have been fully briefed, the Court will proceed to decide the summary judgment motion without any additional filings.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that

1) Docket No. 273-11-08 Vtec is HEREBY DISMISSED as MOOT, due to the expiration of the interim certification.

2) In Docket No. 96-6-10 Vtec , RCO's Motion to Amend the Notice of Appeal is DENIED, as discussed above. RCO's Motion for "Joinder" of Susan Shaw and Ernest Brod as additional parties-appellant, is treated as a motion to intervene and is

9

GRANTED. The Court notes that, due to the timing of their intervention, they may not raise issues beyond those raised by the original appellant RCO, of which they are informal members, and may not file any additional memoranda on the remaining summary judgment motion.

3) In Docket No. 96-6-10 Vtec, Omya, Inc.'s Motion for Summary Judgment to Dismiss RCO as a party is GRANTED, as discussed above. Due to the intervention of Susan Shaw and Ernest Brod, Omya, Inc.'s Motion to Dismiss the appeal for lack of a party appellant is DENIED.

The Court's decision on Appellant's Motion for Summary Judgment is contained in a separate decision and order issued this date under the caption of Docket No. 96-6-10 Vtec alone.

Done at Berlin, Vermont, this 28th day of February, 2011.

_____
Merideth Wright
Environmental Judge