STATE OF VERMONT

SUPERIOR COURT                                ENVIRONMENTAL DIVISION
                                              Docket No. 76-7-19 Vtec

| Snowstone LLC Stormwater Discharge Authorization |
|---|

## ENTRY REGARDING MOTION

Docket No. 76-7-19 Vtec: an appeal from ANR Authorization to Discharge under an MSG Permit.

Title:          Motion to Dismiss Neighbors' Statement of Questions (Motion 5)

Filer:          Snowstone, LLC

Attorney:       Lawrence G. Slason

Filed Date:     November 22, 2019

Response in Opposition filed on 12/20/2019 by Attorney Merrill E. Bent for Appellant Neighbors

Response in Partial Support filed on 01/06/2020 by Attorney David R. Cooper for Petitioners to
        Intervene Maureen and Justin Savage

Further Response in Opposition filed on 01/21/2020 by Atty. Merrill E. Bent for Neighbors

**The motion is GRANTED.**

        This appeal concerns a determination by the Vermont Agency of Natural Resources
("ANR") to authorize the discharge of stormwater proposed by Snowstone, LLC ("Snowstone"),
pursuant to Vermont Multi-Sector General Permit #3-9003 ("MSG Permit") at Snowstone's
proposed dimensional stone extraction project on a 0.93 acre parcel of land off of Tierney Road
in Cavendish, Vermont.[1]  When ANR issued this MSG Permit Authorization, a group of neighbors

---

        [1] Snowstone asserts that its dimensional stone extraction operation will occur on less than one acre of land
and is therefore exempt from the obligation to secure an Act 250 state land use permit.  Snowstone LLC's Motion to
Dismiss Neighbors' Questions as Beyond the Scope of JO Appeal at 2–4, filed Nov. 22, 2019.  Snowstone's
jurisdictional assertion is the subject of a separate appeal filed by Snowstone from an adverse jurisdictional opinion
determination by the District 2 Environmental Commission Coordinator ("District Coordinator").  See In re
Snowstone, LLC JO #2-308, No. 151-11-17 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Feb 21, 2019) (Durkin, J.)
[hereinafter Revised Bifurcated Merits Decision]; see also Jurisdictional Opinion #2-308; Snowstone, LLC, Cavendish,
Vermont (Dist. 2 Coord. Decision Oct. 18, 2017) [hereinafter JO #2-308] (finding that the proposed extraction project
at a previously-existing quarry in Cavendish "constitutes development for a commercial purpose on more than one
acre of land in Cavendish, Vermont —a 'one-acre town' for Act 250 jurisdictional purposes").

("Neighbors") field a timely appeal with this Court.[2]

Now pending before the Court is Snowstone's motion to dismiss all of the Neighbors' Statement of Questions, which if granted would result in this appeal being dismissed. As noted above, the Neighbors object to this dismissal motion; Intervenors Justin and Maureen Savage ("Landowners") offer mostly support for Snowstone's dismissal motion. The Agency and other parties listed below have chosen not to offer comment on the pending motion.

Snowstone bases its dismissal motion upon two general assertions. First, that the Neighbors lack standing pursuant to 10 V.S.A. § 8504(a) to raise the legal issues presented in Questions 1–18, 22, 26, and 28 of Neighbors' Response to Motion to Clarify ("Clarified Statement of Questions"). Neighbors' Response to Motion to Clarify Statement of Questions, filed Oct. 29, 2019. Second, Snowstone asserts that the Neighbors' remaining seven Questions raise issues that are outside this Court's jurisdictional scope concerning the Agency MSG Permit determinations.[3] We address Snowstone's assertions and the Neighbors' objections in these groupings.

In the interest of providing context and clarity to the pending motion, we provide the following procedural background.

Snowstone's proposed project was first presented to this Court in the jurisdictional opinion ("JO #2-308") appeal cited above. See In re Snowstone, LLC JO Appeal, No. 151-11-17 Vtec (Vt. Super. Ct. Envtl. Div. Feb 21, 2019) (Durkin, J.); see also JO #2-308, at 13. Initially, the District Coordinator concluded that all of Landowners' 176 acres should be considered for the purpose of determining Act 250 jurisdiction, rather than just the 0.93-acre portion that Snowstone had contracted to acquire. JO #2-308, at 11–13. The District Coordinator concluded that the parties' purchase and sale contract was not an "arm's-length transaction" and that the entire Savage parcel should be considered "involved land" for the purpose of determining whether Snowstone's proposed extraction operation was subject to Act 250 jurisdiction. Id. Snowstone appealed J.O. #2-308 to this Court; the appeal was assigned Docket No. 151-11-17 Vtec ("JO appeal").

After the parties completed discovery and some settlement discussions, the Court set the JO appeal for a de novo merits hearing on May 17–18, 2018. At trial, it became apparent that the JO appeal presented two principal legal issues: (1) was the Savage-to-Snowstone revised purchase and sale agreement[4] an "arm's-length transaction" and (2) did the evidence presented support Snowstone's assertion that its activities could be contained within the 0.93-acre parcel that it intended to acquire.

---

[2] The Neighbors who filed the above-captioned appeal are: Michael Harrington, Bruce and Linda Watson, Izzet and Sandy Haci, Kim and James Bergeron, Paul Hogan, Maryellen and James Wichelhaus, Ellen and Edward Beatty, Kevin and Ann Brown, Kern and Svetlana Phillips, Judy and Dan Massey, Joe Calzone, and Teresa Harrington.

[3] The remaining questions include Questions 19–21, 23–25, and 27.

[4] The Savages and Mr. Snowstone revised their purchase and sale agreement on March 15, 2018, after Mr. Snowstone received the adverse jurisdictional opinion from the District Coordinator. See Revised Bifurcated Merits Decision, at 9, ¶ 35.

After Snowstone completed its case in chief, the Neighbors represented that they had no evidence to contest Snowstone's claim that its proposed purchase from Landowners was an arm's length transaction. The Court therefore noted that its merits decision would likely include such a legal conclusion. See In re Snowstone, LLC JO #2-308, No. 151-11-17 Vtec, slip op. at 13–15 (Vt. Super. Ct. Envtl. Div. Nov. 27, 2018) (Durkin, J.) (concluding the contract represents an arm's length transaction). However, as to the second disputed legal principal, Neighbors contested Snowstone's assertion that both its extraction operation and any containment or treatment of stormwater discharged by the extraction operation could be contained within the 0.93-acre parcel that Snowstone proposed to purchase.

Snowstone then proposed that the Court bifurcate its merits decision by first rendering a decision on the first legal principal (the "arm's length transaction" issue) and that Snowstone would seek review of its proposed stormwater plans by ANR, with the thought that ANR's review could assist the parties and the Court in determining whether Snowstone's proposed activities could occur within the 0.93-acre parcel.[5] Neighbors agreed to Snowstone's procedural proposal and the Court directed the parties to prepare draft language for an interim order. The parties each filed their own proposed interim order language. After consideration of the proposed language, the Court issued its own Interim Order. See In re Snowstone, LLC JO #2-303, No. 151-11-17 Vtec (Vt. Super. Ct. Envtl. Div. June 14, 2018) (Durkin, J.) [hereinafter Interim Order].

The Interim Order provided a timeline by which Snowstone shall submit an application "for all stormwater and discharge permits required for the proposed quarrying operation." Id. at 4. The Order continued with the following directives:

> 4.    Snowstone, LLC or its agent(s) shall transmit copies of the permit application(s) and supporting materials [to] Neighbors' counsel via e-mail or first-class mail on the same day as it is submitted.
>
> 5.    Any Snowstone permit application pertaining to this proposed quarry project shall include a request that the Neighbors be included on an Interested Persons List, pursuant to the Environmental Protection Rules, Chapter 18, Stormwater Management Rule § 18-308(d).
>
> 6.    Snowstone will not contest Neighbors' standing in permitting proceedings concerning the proposed quarry or Neighbors' status as "persons aggrieved" *for purposes of standing to intervene in the permitting process or to appeal under the Rule, §18-314 and 10 V.S.A. Chapter 220.7.*

Id. at 5 (emphasis added).

As directed, Snowstone submitted an application to ANR's Department of Environmental Conservation ("DEC") for authority to act under a Multi-Sector General Permit ("MSG Permit); that application included Snowstone's proposed stormwater pollution prevention plan ("SWPPP") and the best management practices ("BMP") that it would follow during its

---

[5]  This procedural history is recounted in the Revised Bifurcated Merits Decision. See Revised Bifurcated Merits Decision, at 3–4.

dimensional stone extraction operation.[6]  There has been no evidence presented to this Court that Snowstone's proposed extraction project, if operated as described, would be required by applicable laws and regulations to obtain any other stormwater or other permits, including an operational stormwater permit or a construction stormwater discharge permit.

DEC placed Snowstone's MSG permit application out for public comment and the Neighbors responded with a number of comments and questions.  In response, Snowstone revised its SWPPP and BMP proposals.  DEC thereafter authorized Snowstone to operate under the MSG Permit.  Implicit in Snowstone's proposals was its assertion that it could and would conduct its dimensional stone extraction operation and its stormwater collection or treatment operation within the confines of the 0.93-acre parcel.

Snowstone submitted a copy of the DEC Response Summary for Notice of Intent (NOI) #8309-9003 for Authorization to Discharge under Vermont Multi-Sector-General Permit (MSGP) #3-9003 as an attachment to its Motion to Dismiss Neighbors' Questions.  That summary lists the thirty-five comments or questions that Neighbors presented and the responses by both Snowstone and DEC to those comments and questions.  In light of these comments and responses, DEC then issued its authorization for Snowstone to address any stormwater discharge from its extraction site pursuant to the MSG Permit #3-9003.

In response to the DEC Authorization, Neighbors filed a timely appeal of that ANR determination with this Court.  That appeal is the subject of Docket No. 76-7-19 Vtec.

As an aside, the Court, solely for purposes of context, refers back to the directive contained in the Interim Order in Docket No. 151-11-17 Vtec: the outstanding legal issue in that appeal continues to be whether Snowstone's proposed stone extraction operation and any measurable stormwater discharges can be contained within the proposed 0.93-acre parcel.  It appears that Snowstone's revised SWPPP and BMP practices assert that the 0.93-acre area is sufficient in size to contain those activities.  On the other hand, the Neighbors appear to dispute Snowstone's assertion in this regard.

In addressing Snowstone's pending motion, we only look to the Statement of Questions that Neighbors filed in this appeal from the DEC Authorization.  Interestingly, we are not aware of any party requesting that the Court conduct "a further hearing on whether any stormwater permit determination has a relevancy to the legal issue of whether all activities necessary for the operation of the proposed quarry can occur within the 0.93± acres that Snowstone proposes to purchase."  Interim Order, at 5.  We are not aware of any party requesting a further hearing within the 30 days of the issuance of the DEC Authorization.  We leave that issue for now, to be addressed in that separate Docket (No. 151-11-17 Vtec).

Having presented the procedural background, we turn to the legal issues raised in this MSG Permit appeal by Snowstone's Motion to Dismiss.

---

[6] The Court's understanding is that an application for authority to act under an MSG permit is not a permit that specifically directs how stormwater is to be collected or treated for a specific project.  Rather, an MSG Permit authorization directs that the operators of a certain project abide by the terms and conditions of a general permit.

## I. **Neighbors' Standing to Raise Certain Challenges**

Our authority to hear and adjudicate litigation is constrained in a manner similar to all trial courts' jurisdiction: we may only consider claims that present an actual case or controversy between the parties in the pending litigation. Chase v. State, 2008 VT 107, ¶ 11, 184 Vt. 430; Doria v. Univ. of Vt., 156 Vt. 114, 117 (1991). In the context of land use disputes, we have guidance from the statutes that govern who may participate and prosecute a land use dispute in the Environmental Division of the Superior Courts. See 10 V.S.A. § 8504(a).

Any "person aggrieved by an act or decision by the Secretary" of ANR or the District Commissions may appeal to this Court. 10 V.S.A. § 8504(a). A "person aggrieved" is "a person who alleges an injury to a particularized interest protected by the provisions of law listed in [§] 8503 of this title, attributable to an act or decision by the . . . Secretary" of ANR or the District Commissions. 10 V.S.A. § 8501(7). While these statutory provisions use the term "particularized interest," they do not provide a specific definition. Id. So, we look to case law precedent for guidance.

Our Supreme Court has frequently used the term, but also has not provided a specific definition. However, this Court has opined that a "particularized interest" is defined as an interest that is "particular to th[at person], rather than a general policy concern shared with the public." In re Killington Village Master Plan Act 250 Application Appeal, No. 147-10-13 Vtec, slip op. at 9 (Vt. Super. Ct. Envtl. Div. Aug. 6, 2014) (Durkin, J.) (citing In re Pion Sand and Gravel Pit, No. 245-12-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.)). In addition, the person or entity, to qualify as an interested person, "must show a reasonable possibility that the . . . decision [appealed from] may affect its particularized interest." Killington Village Master Plan, No. 147-10-13 Vtec at 9 (Aug. 6, 2014). A sufficient showing cannot be "purely speculative" and must meet a "minimum factual threshold." In re North East Materials Group, LLC, No. 35313, 2013 WL 5288469, at *4 (Vt. Super. Aug. 21, 2013) (citing In re RCC Atlantic, Inc., No. 163-7-08 Vtec, slip op. at 8 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.)).

Neighbors raise a number of questions about how Snowstone's SWPPP and BMP's will operate, where those operations will occur, and where stormwater may flow. But until recently, we were not presented with any allegations of an impact from those activities that is particular to the Neighbors. Without this information, we are compelled to conclude that Neighbors have failed to show that the DEC Authorization could possibly have an impact upon their particularized interests.

In Neighbors Supplemental Opposition Memorandum, Neighbors present two assertions of potential impacts upon their particularized interests. Neighbors' Supplemental Opposition to Snowstone's Motion to Dismiss, at 6–9, filed Jan. 21, 2020 [hereinafter Neighbors' Opposition Memorandum]. Since they are distinct, we take them in turn.

First, Neighbors allege that, if Snowstone were to "improperly manage[] stormwater runoff from the Snowstone project" the Neighbors' "interest[s] would be affected by water pollution . . . ." Neighbors' Opposition Memorandum, at 6. We are startled that Neighbors' assertion is premised upon an assumption that Snowstone's extraction operation would be "improperly managed." More importantly, we find no basis in the record or in Neighbors'

assertions as to why we could presume that Snowstone would operate its project improperly or unlawfully. Moreover, Neighbors do not present any explanation as to why Snowstone could not operate its project within the confines of the 0.93-acre parcel. While Neighbors may sincerely fear such improper management, we cannot adopt that fear as a foundation to determine that an adverse impact could occur. Rather, should Snowstone not abide by its MGS Permit Authorization, the remedy is not to block their lawful operation before it has even begun, but rather to seek enforcement or closure under that Authorization.

We further note that the record now before us contains no foundation for Neighbors' assertion that Snowstone's dimensional stone extraction operation will cause the preexisting woods road that Snowstone will use to access its site to become a "'sluiceway' for polluted water runoff . . . ." Id. at 6. As we concluded in our Revised Bifurcated Merits Decision, Snowstone proposed to limit its operations to a very small area (0.64 acres) and will principally be extracting the dimensional stone with hand tools. Very limited blasts to loosen stone may occur no more than once per year. Revised Bifurcated Merits Decision, at 8–9.

The woods road Snowstone intends to use has existed for some time; there was no evidence presented that it has previously become a "sluiceway" nor any foundation for how Snowstone's limited extraction operations could turn it in to one. With no foundation for these assertions, we cannot conclude that they create even a possibility of the impacts that the Neighbors' assert. We therefore conclude that these unfounded assertions cannot provide a legal basis for Neighbors' asserted particularized interests.

Neighbors present a second assertion that they enjoy a particularized interest that the Court may adjudicate in this litigation. In their Opposition Memorandum, they contend that "all of the Neighbors have already suffered a reduction in their home values by virtue of the proposed project . . . ." Neighbors' Opposition Memorandum, at 7. To support this assertion, Neighbors provided a copy of a determination from the Vermont Department of Taxes, Property Valuation and Review Division ("PVR") of one Neighbor's appeal of the Town of Cavendish Grand list assessment of their home's value. The PVR Hearing Officer, in lowering their home's value by $49,000.00, references a currently operating "small gravel pit" that is proposed for expansion. Id. at Exhibit I. The Hearing Officer also appears to rely upon a representation that the gravel pit expansion was significant enough to require an Act 250 permit. We assume that the Hearing Officer's references are based upon the Neighbor's representations during their tax appeal. We make no determination of the accuracy of the Neighbor's reference to a "gravel pit."

Neighbors provide us with no citation to the legal authority for this Court to consider impacts upon an adjoining home's value in an appeal from a DEC authorization to operate under an MSG Permit. Our independent legal research finds none. Nor could we find any legal authority for this Court to consider an impact upon an adjacent home's valuation in an Act 250 jurisdictional appeal or, for that matter, in any Act 250 permit application proceeding. See 10 V.S.A. § 6086(a) (listing the criteria to be considered in Act 250 proceedings). We therefore decline to adopt Neighbors' assertion of a particularized interest that this Court can adjudicate in these coordinated appeals, since we find no legal authority for it.

Neighbors also assert that Snowstone is now raising a legal challenge that this Court has already rejected twice, and that Snowstone's arguments now are "disingenuous at best," given

Snowstone's representations at our last merits hearing. Neighbors' Opposition to Snowstone's Motion to Dismiss at 2, filed Dec. 20, 2019. We appreciate Neighbors' concern and frustration, but do not agree with their premise that it is not appropriate for the Court to now consider Snowstone's dismissal motion.

First, we note that in the Interim Oder in Docket No. 151-11-17 Vtec, Snowstone did not propose, and the Court did not Order, that the Neighbors would have an unconditional right to maintain an appeal before this Court of the ANR stormwater discharge authorization. Rather, and in an effort to allow Neighbors' concerns about the scope of Snowstone's proposed operation to be fully aired, this Court directed that Snowstone not contest "Neighbors' status as 'persons aggrieved' *for purposes of standing to intervene in the permitting process or to appeal under the Rule . . . .*" Interim Order, at 5 (emphasis added). This directive had its intended effect: to allow Neighbors to be fully informed about Snowstone's stormwater application and its representations to DEC. It was not intended to provide Neighbors with carte blanche to present all manner of legal challenges and questions in a subsequent appeal to this Court of the DEC determination. To maintain that appeal, Neighbors are required to show that there is a constitutionally cognizant case or controversy that they may litigate. Chase, 2008 VT 107, ¶ 11; Doria, 156 Vt. at 117.

Even if the Court had intended to provide Neighbors with an absolute right to raise any issues in a subsequent appeal from the DEC Authorization, we could not, since the law provides that challenges to party status are not waivable. See In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 7, 188 Vt. 262 ("The question of standing is a legal one. 'Standing embodies a core constitutional component and a prudential component of self-imposed judicial limits.'") (quoting Hinesburg Sand & Gravel Co. v. State, 166 Vt. 337, 341 (1997)). This premise is understandable when one recognizes that courts are not authorized to address all questions a person may pose in litigation; we are only constitutionally authorized to adjudicate actual cases or controversies for which the parties have standing. Garzo v. Stowe Bd. of Adjustment, 144 Vt. 298, 302 (1984) (stating that a Court "may not judicially expand the class of persons entitled to such review"); In re Albert, 2008 VT 30, ¶ 7, 183 Vt. 637 (mem.).

Given that we have not been provided with claims by Neighbors that the DEC Authorization could have an adverse impact upon Neighbors' particularized interests, we conclude that Neighbors lack the requisite standing to maintain this appeal. Therefore, Questions 1–18, 22, 26, and 28 of Neighbors' Statement of Questions are **DISMISSED**.

## II.  Snowstone's Challenge to Neighbors' Remaining Questions

Snowstone also asserts that the Neighbors' seven remaining Questions (Questions 19–21, 23–25, and 27) "are moot or are outside of this Court's jurisdiction to address . . . ." Snowstone's Motion to Dismiss at 6, filed Nov. 22, 2019. It does not appear that the Neighbors specifically responded to these claims of mootness or exceeding the scope of the legal issues that this Court may address in this MSG Permit Authorization appeal. See, Neighbors' Opposition to Snowstone's Motion to Dismiss at 1–4, filed on Dec. 20, 2019; and Neighbors' Supplemental Opposition Memorandum, filed Jan. 21, 2020. We nonetheless address these Questions and Snowstone's challenges to them to determine whether they are, in fact, moot or beyond our jurisdictional authority.

Questions 19–21 make reference to Snowstone's SWPPP and ask whether certain "off-site activities" referenced in the SWPPP "will occur within 5 miles of the project site" (Question 19); where such activities will occur generally (Question 20); and whether such activities "have appropriate MSGP coverage" (Question 21). See Neighbors' Statement of Questions at 3, filed July 28, 2019; see also Neighbors' Response to Motion to Clarify Statement of Questions at 10, filed Oct. 29, 2019.

We first must note that the parties have placed the Court at a disadvantage because no party has provided the Court with a copy of Snowstone's SWPPP. Nonetheless, we believe we can discern the subject of these Questions upon review of DEC's summary of the questions and comments posed by the Neighbors in the DEC review, as well as Snowstone's and DEC's response to those questions and comments.

The DEC summary makes clear that all activities proposed by Snowstone or authorized by DEC will occur within the 0.64-acre project site or the 0.29-acre access road. Neighbors have not presented any evidence that Snowstone's proposed dimensional stone extraction activities will occur beyond the confines of this combined 0.93-acre area. If, in fact, Snowstone's activities, including stormwater pollution prevention activities, were to occur beyond this limited area, Snowstone would be in violation of its MSG Permit Authorization and could be subject to Act 250 jurisdiction, should its activities encompass one or more acre of land. But we cannot entertain such a concern where there is no factual basis presented for those concerns. See In re Barefoot & Zweig Act 250 Application, No. 46412, 2013 WL 1182791 (Vt. Super. Mar. 13, 2013) (asserting that where "no factual basis" or "sufficiently concrete evidence" exists to show a reasonable possibility of a party's affected interests, the party has no party status); Madden v. Town of New Haven, No. 2019-079, 2019 WL 3761646, at *1 (Vt. Aug. 7, 2019) (upholding a trial court that considered a motion to dismiss as a summary judgment motion, which dismissed the plaintiff for lack of standing when the plaintiff "merely speculates about potential harm"). The DEC summary repeatedly states that the MSG Permit Authorization is premised upon Snowstone's uncontroverted representations that its activities will be confined to the total 0.93-acre area. Without some evidence presented that Snowstone's activities will exceed that less-than-one-acre area, we conclude that the legal issues presented by Neighbors' Questions 19–21 are premised upon unsubstantiated speculation and therefore must be **DISMISSED**.

By their Questions 23–25, Neighbors appear to be asking whether Snowstone's proposed activities will require an "operational phase stormwater permit" (Question 23) or a "construction stormwater discharge permit" (Question 24), or whether the combined Snowstone and Savages lands "constitute a common plan of development" that would necessitate "either the operational phase stormwater permit or the construction stormwater discharge permit" (Question 25). Neighbors' Statement of Questions at 3–4, filed July 28, 2019; see also Neighbors' Response to Motion to Clarify Statement of Questions at 10–11, filed Oct. 29, 2019. Similarly, Neighbors' Question 27 asks whether "any site disturbance or activities" proposed by Snowstone would necessitate an MSHA permit.[7] These Questions appear to be unbridled efforts to seek an advisory opinion on the general topics of what other permits may be required for the proposed

---

[7] We understand that MSHA is an acronym for the federal Mine Safety and Health Administration.

dimensional stone extraction operations.  We decline to provide such advisory opinions, since it is not proper for trial courts to do so.  See In re 232511 Investments, Ltd., d/b/a Stowe Highlands, 2006 VT 27, ¶ 19, 179 Vt. 409.

For all these reasons, we conclude that Questions 23–25, and 27 improperly seek advisory opinions, that the Court should not respond to them, and that these Questions should also be **DISMISSED**.

As a consequence, and resulting from all of the above, we **GRANT** Snowstone's motion to dismiss all the Questions in this appeal.  Because of this, this appeal is **DISMISSED.**

**So Ordered.**

Electronically signed on January 28, 2020 at Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division

Notifications:

Merrill E. Bent (ERN 5013), Attorney for Appellants Michael Harrington, Bruce and Linda Watson, Izzet and Sandy Haci, James and Kim Bergeron, Paul Hogan, James and Maryellen Wichelhaus, Edward and Ellen Beatty, Kevin and Ann Brown, Kern and Svetlana Phillips, Daniel and Judy Massey, Joseph Calzone, and Teresa Harrington

Lawrence G. Slason (ERN 2443), Attorney for Appellee/Applicant Snowstone, LLC

Gregory J. Boulbol (ERN 1712), Attorney for the Vermont Natural Resources Board

Elizabeth Lord, Attorney for the Vt. Agency of Natural Resources (FYI Purposes Only)

David R. Cooper (ERN 4756), Attorney for Petitioners to Intervene Justin and Maureen Savage